The State of Ohio, Appellee, *v.* Call et al., Appellants.

[Cite as State v. Call, 8 Ohio App. 2d 277.]

278

(No. 2905—Decided July 10, 1965.)

*Mr. Lee C. Falke,* prosecuting attorney, *Mr. Daniel J. O'Brien* and *Mr. Leonard P. Zdara,* for appellee.
*Mr. Herbert M. Eikenbary,* for appellant Wesley J. Call.
*Mr. Jack H. Patricoff,* for appellant Harold A. Call.

SHERER, P. J. Appellants, Wesley J. Call and Harold A. Call, are appealing judgments of conviction and sentence by the Common Pleas Court of Montgomery County, Ohio, on two counts of burglary at night and a charge that they were carrying a concealed weapon.

Appellants were indicted and tried together in the Common Pleas Court in case No. 24578 for the burglary of the Johnsville Elementary School in Montgomery County in violation of Section 2907.10 of the Revised Code. They were indicted and tried together in the Common Pleas Court under case No. 24579 for the burglary of the Johnsville-New Lebanon High School in violation of Section 2907.10 of the Revised Code, and, on a second count, of carrying a concealed weapon in violation of Section 2923.01 of the Revised Code. These cases were consolidated for trial in the Common Pleas Court by agreement of counsel and have been consolidated for the purpose of this appeal.

It is claimed that the trial court erred to the prejudice of

appellants in three respects: (1) In admitting, over objection, evidence obtained by police officers by an illegal search and seizure in violation of the Fourth Amendment of the Constitution of the United States; (2) in admitting testimony that Wesley J. Call was a parole violator and that Harold A. Call was a probation violator; and (3) that the judgments of conviction are manifestly against the weight of the evidence and contrary to law.

The rule that evidence illegally obtained must be excluded in criminal prosecutions in state courts because of the Fourteenth Amendment to the Constitution of the United States is set forth by the Supreme Court of the United States in *Mapp* v. *Ohio* (1961), 367 U. S. 643.

At 3:27 a. m. on February 7, 1964, Officer Branson, a Madison Township police officer, observed an automobile owned by appellant Harold A. Call, and being operated by appellant Wesley J. Call, speeding eastwardly on Hoover Avenue in Montgomery County outside the city of Dayton. Officer Branson followed the automobile, occupied by appellants, from Guenther Road in Montgomery County to the intersection of Hoover Avenue and Gettysburg Avenue in the city of Dayton, where he stopped the car and arrested Wesley Call for speeding and so informed the appellants. Officer Branson approached the driver and requested his driver's license and the registration certificate for the automobile. Upon obtaining these papers, Officer Branson recognized the names thereon as men known by him to be burglars. Thereupon, he ordered the car driven onto a filling station lot, handcuffed them, put them into his cruiser and radioed the sheriff's office that he had them in custody. Officer Branson noted fresh mud on their shoes, and they stated that about 2 a. m. they had driven over into Indiana to see a girl friend and had car trouble and pulled off the road to fix it. Officer Branson found no mud on the car's tires and called this fact to their attention.

One week previously, in the early morning hours, this officer had observed an automobile, registered in the name of one of the appellants, parked in a private lane about 150 yards from the American Legion Hall on Wolf Creek Pike in Madison Township, which he later learned had been burglarized that evening.

Deputy Sheriff Good arrived on the scene in response to Branson's call at 3:45 a. m. and, upon recognizing appellants as men known to him by their prior criminal records as burglars operating in the area and knowing that Wesley Call was on parole and that Harold Call was on probation, placed them under arrest as parole and probation violators. He and Officer Branson then searched the front of the automobile and found a fully loaded .38 caliber pistol concealed under the front seat of the car on the passenger's side.

Officer Good then requested the keys to the car and obtained them from Wesley Call. Both officers then further searched the automobile. The officers found numerous crowbars, pry bars, a portable torch, a transistor radio, Exhibit 8, assorted tools, including a large crowbar, Exhibit 17, in the trunk of the car, and substantial amounts of small change, Exhibits 11A and 11B, stamps, Exhibits 10 and 14, a watch, Exhibit 9, and a ring, Exhibit 13. They seized all of these items excepting the large crowbar, the radio and the assorted small tools. The car was impounded and removed to a garage, and appellants were taken to the county jail.

Upon being questioned, appellant Wesley Call told the officers that he had found the gun on the West Third Street bridge in Dayton that day and that he had intended to turn it in, but forgot about it. Harold Call told the officers that he knew the gun was in the car.

The Fourth Amendment of the Constitution of the United States provides that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. The protection afforded by this amendment is applicable to searches of motor vehicles. Questions involving searches of motor vehicles are not treated as identical to questions arising out of searches of fixed structures like houses. *Carroll* v. *United States* (1925), 267 U. S. 132; *Brinegar* v. *United States* (1949), 338 U. S. 160; *Preston* v. *United States* (1964), 376 U. S. 364.

The Supreme Court of the United States has recognized an exception to the rule that a search must rest upon a search war-

rant in cases where the search is incident to a lawful arrest. *Weeks* v. *United States* (1914), 232 U. S. 383, 392; *Agnello* v. *United States* (1925), 269 U. S. 20, 30. In *Ker* v. *California* (1962), 374 U. S. 23, 34, 35, the court said that the evidence at issue, in order to be admissible, must be the product of a search incident to a lawful arrest, since the officers had no search warrant. The court said further that the lawfulness of an arrest without warrant, in turn, must be based upon probable cause, which exists where the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed.

The Supreme Court has recognized the right of a police officer, without a search warrant, contemporaneously to search persons lawfully arrested and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things which might be used to effect an escape from custody. *Agnello* v. *United States* (1925), 269 U. S. 20, 30.

In *United States* v. *Jeffers* (1951), 342 U. S. 48, 51, the court said:

"The Fourth Amendment prohibits unreasonable searches and unreasonable seizures, and its protection extends to both 'houses' and 'effects.' Over and over again this court has emphasized that the mandate of the Amendment requires adherence to judicial processes. * * * Only where incident to a valid arrest, *United States* v. *Rabinowitz*, 339 U. S. 56 (1950), or in 'exceptional circumstances,' *Johnson* v. *United States*, 333 U. S. 10 (1948), may an exemption lie, and then the burden is on those seeking the exemption to show the need for it, *McDonald* v. *United States*, 335 U. S. 451, 456 (1948). * * *"

In *Harris* v. *United States* (1947), 331 U. S. 145, 150, the Supreme Court has pointed out "that it is only reasonable searches and seizures which come within the constitutional interdict. The test of reasonableness cannot be stated in rigid and absolute terms."

Each case is to be decided on its own facts and circumstances. *Go-Bart Importing Co,* v, *United States* (1931), 282 U. S. 344, 357,

In *Preston* v. *United States* (1964), 376 U. S. 364, 366, 367, the court said:

"* * * Common sense dictates, of course, that questions involving searches of motorcars or other things readily moved cannot be treated as identical to questions arising out of searches of fixed structures like houses. For this reason, what may be an unreasonable search of a house may be reasonable in the case of a motorcar. See *Carroll* v. *United States, supra,* 267 U. S. at 153. But even in the case of motorcars, the test still is, was the search unreasonable. Therefore we must inquire whether the facts of this case are such as to fall within any of the exceptions to the constitutional rule that a search warrant must be had before a search may be made.

"It is argued that the search and seizure was justified as incidental to a lawful arrest. Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. *Weeks* v. *United States,* 232 U. S. 383, 392 (1914); *Agnello* v. *United States,* 269 U. S. 20, 30 (1925). This right to search and seize without a warrant extends to things under the accused's immediate control, *Carroll* v. *United States, supra,* 267 U. S. at 158, and, to an extent depending on the circumstances of the case, to the place where he is arrested, *Agnello* v. *United States, supra,* 269 U. S. at 30; *Marron* v. *United States,* 275 U. S. 192, 199 (1927); *United States* v. *Rabinowitz,* 339 U. S. 56, 61, 62 (1950). The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape as well as the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time and place from the arrest. Once an accused is under arrest and in custody, then a search made at another place without a warrant is simply not incident to the arrest. *Agnello* v. *United States, supra,* 269 U. S. at 31. * * *"

We must determine whether the search of the persons of appellants and the automobile was made incident to a lawful

arrest, or whether the circumstances here are so exceptional as to permit a search as authorized by *Johnson* v. *United States* (1948), 333 U. S. 10, and whether the prosecution has shown the necessity for such a search without a warrant as required by *McDonald* v. *United States* (1948), 335 U. S. 451.

Officer Branson arrested Wesley Call for speeding. Under the Supreme Court's rule announced in *Agnello,* a search could be made for weapons and other things which might be used to effect an escape from custody. Officer Branson was authorized by Section 2935.03 of the Revised Code to arrest Wesley Call for speeding and detain him until he could obtain a warrant. Officer Branson recognized Wesley Call as one known to him to be a burglar. He observed fresh mud on his shoes. Wesley Call told him that they had driven out into Indiana to see a girl friend and had had car trouble and had pulled off the road to fix the car. Officer Branson noted that there was no mud on the tires of the automobile. One week previously he had seen a car licensed to Harold Call parked in a private lane across from the American Legion Hall in the neighborhood, and he later learned that such building had been burglarized that night. But, before any search of the car was begun, appellants had been "patted down" for weapons, handcuffed and put into Branson's police cruiser by Branson before Officers Good and Simms arrived. Three officers, Branson, Good and Simms, a Jefferson Township police officer, were all present before the search began. There was no reasonable basis, upon these facts, for believing that a search for weapons was necessary to protect the officers or prevent appellants' escape from custody. Officer Branson, when alone with appellants, did not fear for his safety or that appellants would escape. He "patted them down" before Good and Simms arrived. Branson's act in handcuffing Harold Call had no connection with the speeding charge against Wesley Call and is some indication that he was proceeding to investigate a possible burglary. The officers had no right to search for or seize the other articles in dispute here as an incident to the arrest for speeding, because there are no fruits of the crime of speeding and the automobile was the means of committing the offense. It was in plain view and required no search.

The record shows that Officer Good, in addition to arrest-

ing appellants as probation and parole violators, booked them at the county jail on "suspicion of carrying a concealed weapon." Where a search is made as incident to a lawful arrest, the officers may seize property, the possession of which is unlawful. *Harris* v. *United States* (1947), 331 U. S. 145, 154.

When Officer Good arrived at the scene where appellants were apprehended by Officer Branson, he recognized them and knew from their prior records that they had been previously convicted of burglary and that Wesley Call was on parole and Harold Call was on probation for these offenses. He placed them under arrest as such violators.

The next question is whether the search for and seizure of the evidence sought to be suppressed here can be said to be incidental to a lawful arrest of appellants for the violation of their probation and parole.

Wesley Call was subject to arrest as a parole violator as provided in Sections 2965.21 and 2941.46 of the Revised Code. A deputy sheriff is authorized to arrest a parolee upon the order of a parole officer who has *reasonable cause* to believe that he has violated the conditions of his parole. No such order has been shown here. Section 2941.46 of the Revised Code authorizes a deputy sheriff to arrest a parolee forthwith upon being advised or *knowing* that such parolee is in his bailiwick and has violated the conditions of his parole.

Officer Good knew when he arrived at the scene of appellants' apprehension that Harold Call was on probation on a charge of burglary. He arrested appellants immediately upon sight. Wesley Call testified at the hearing on appellants' motion to suppress evidence that he knew that he was violating the conditions of his parole by leaving the state. But there is no evidence that Deputy Sheriff Good knew the conditions of such parole set by the Pardon and Parole Commission or *knew* of any facts before the search, which showed a parole violation. True, he knew that Wesley Call, a parolee, was abroad at 3:30 a. m., but he did not know that there was a curfew on him. Wesley Call testified that no curfew had been imposed upon him.

A statement that one has cause to believe, not supported by a statement of facts which constitutes a basis for a reasonable cause for belief, is not sufficient to constitute reasonable cause. *Giordenello* v. *United States* (1958), 357 U. S. 480, 486. The word "knows" in the statute requires more facts than are re-

quired to establish reasonable cause. In *Henry* v. *United States* (1959), 361 U. S. 98, 103, it was held that the right to search is to be determined by what the officer *knows* before the arrest. Good did not *know* that Wesley Call had violated his parole, and his arrest was not a valid arrest and the ensuing search cannot be said to be incidental to that arrest.

Officer Good was not empowered to arrest Harold Call as a probation violator. Section 2951.08 of the Revised Code, relating to the arrest of probation violators, authorizes a deputy sheriff to arrest a person for the violation of the conditions of his probation *upon the written order of the chief probation officer*. The evidence does not show any such order; his arrest was not a valid arrest and the search of the car, his effects and his person cannot be said to be incidental to this arrest as a probation violator.

The question, then, is: Can the search of the car, of the persons and of the effects of appellants, and the seizure of the evidence sought to be suppressed, be said to be upon probable cause to believe that a crime had been or was being committed by appellants? They were not arrested for burglary on the night in question, February 7. They were subsequently indicted on two counts of burglary and on a charge of carrying a concealed weapon by the April grand jury, as a result of an investigation following February 7 and a search of the car four days thereafter, while it was in the garage and the appellants were in jail. It is not necessary that arrest take place before a search, if the search is based upon probable cause to believe that a crime has been committed. *Husty* v. *United States* (1931), 282 U. S. 694.

The Supreme Court of the United States has defined probable cause. In *Carroll* v. *United States* (1925), 267 U. S. 132, the court said:

Probable cause exists where "the facts and circumstances within" the arresting officer's "knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.

And, in *Brinegar* v. *United States* (1949), 338 U. S. 160, 175, the court quoted the language of the *Carroll case* and, in addition, stated:

"In dealing with probable cause, however, as the very

name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of every day life on which * * * prudent men, not technicians, act. The standard of proof is accordingly correlative to what must be proved.''

Both *Brinegar* and *Carroll* quote with approval the language employed by the Supreme Court of Pennsylvania in *McCarthy* v. *De Armit,* 99 Pa. St. 63:

''The substance of all the definitions is a reasonable ground for belief of guilt.''

We have examined numerous cases decided by the Supreme Court of the United States in which the right of law enforcement officers, without a search warrant, to search and seize was challenged. In all cases in which the right to search for and seize evidence was held to be upon probable cause, there was a showing of facts indicating that a crime had been or was being committed, or a showing of some facts or information within the officer's knowledge which formed some reasonable basis for believing that the one whose person or property was searched had committed or was committing it. Here, the officers admittedly had had no report of a burglary or any other crime before the search was instituted.

The officers knew that both appellants had been convicted of burglary and that one was on probation and the other on parole on that charge. They knew that appellants were abroad at 3:30 a. m. without a reasonable explanation. Branson knew that they had mud on their shoes while there was none on the tires of their car. There is no evidence that Good knew it. They knew *after the arrests* that appellants told a ''bear story'' about car trouble and getting off the road to fix it. This story indicates that appellants were trying to conceal their movements on the night in question. Branson knew that there had previously been unsolved burglaries in the neighborhood where they were apprehended. There is no evidence that Good knew it. Branson knew that a car belonging to one of the appellants had been found parked in a private lane near the American Legion Hall in the same neighborhood one week previously, and that subsequently it was discovered that the Legion Hall had been burglarized on that evening. There is no evidence that this fact was known to Good.

Section 2933.23 of the Revised Code provides that a search warrant shall not be issued until there is filed with a judge or magistrate an affidavit particularly describing the house or place to be searched, the things to be searched for and seized, and alleging substantially the offense in relation thereto, and that the complainant believes and has good cause to believe that such things are there concealed, and he shall state the facts upon which such belief is based.

The searcher must have in mind some reasonably specific thing he is looking for and reasonable grounds to believe it is in the place being searched. General exploratory searches are not tolerated. *Go-Bart Importing Co.* v. *United States* (1931), 282 U. S. 344, 357.

Let us suppose that immediately after Officer Good arrested appellants as probation and parole violators he had gone to a judge or magistrate to procure a search warrant. He could not have described the things he wished to search for and seize or have alleged substantially an offense in relation thereto. He could not have alleged facts showing that he had good cause to believe that the things found here were concealed in the car. He could not have obtained a search warrant upon the facts then within his knowledge. Officer Good knew that appellants were convicted burglars on probation and parole and that they were abroad at 3:30 a. m. Such facts were sufficient to raise a suspicion that appellants might have committed a crime, but it cannot be said that they constitute probable cause to believe that a crime had been committed. To hold otherwise would be to accord a police officer more latitude in conducting a search without a search warrant than with one. That we cannot hold. In *Wong Sun* v. *United States* (1963), 371 U. S. 471, 479, the court said that the requirements of reliability and particularly of the information on which an officer may arrest cannot be less stringent than where an arrest warrant is obtained.

Later in the day of appellants' arrest, a burglary of the Johnsville-New Lebanon Elementary and High Schools was reported to the sheriff's office. Within the next few days, the articles reported missing from these schools were compared to the articles seized from appellants' car and gave rise to a greater suspicion that there was a connection between the two. The only items reported to the sheriff as missing initially were postage

stamps and some small change. An officer was dispatched to the garage where the car was stored and he seized a large crowbar, Exhibit 17, and radio, Exhibit 8, and, by means of an analysis of marks on the crowbar with marks on the locks at the school, it was revealed that that bar had been used in the burglary. It was at that point that probable cause to believe that appellants had committed a burglary was established. They were subsequently indicted by the April grand jury.

Furthermore, when an exemption from the requirement of a search warrant is claimed, the burden is upon those seeking the exemption to show the need for it. *McDonald* v. *United States* (1948), 335 U. S. 451, 456. After the appellants were taken into custody for the violation of their probation and parole, there was no necessity for an immediate search. There was ample time within which a search warrant could have been sought.

We have noted that in *United States* v. *Jeffers* (1951), 342 U. S. 48, 51, the Supreme Court said that a search without a warrant may be made only where incident to a valid arrest, citing *United States* v. *Rabinowitz* (1950), 339 U. S. 56, *or* under exceptional circumstances, citing *Johnson* v. *United States* (1948), 333 U. S. 10, and that in such exceptions, those seeking the exemption must show the need for it. We have also noted that the court has said that the Fourth Amendment prohibits only unreasonable searches and that each case is to be decided on its own facts and circumstances. We must determine whether the search and seizure were reasonable for the reason that they were made in exceptional circumstances, and whether the articles seized were admissible in evidence against either or both appellants.

We have searched in vain for a case decided by the Supreme Court of the United States which involves a question of search and seizure upon a showing of facts such as we have here.

We understand and appreciate the necessity for the rule announced by the Supreme Court in *Mapp* v. *Ohio* (1961), 367 U. S. 643, that evidence obtained by a search and seizure in violation of the Fourth Amendment is inadmissible, and that it is applicable in criminal prosecutions in state courts, and with the rule announced by that court in *Ker* v. *California* (1962), 374 U. S. 23, 33, that federal standards of "reasonableness" are

to be applied in determining the legality of state searches and seizures.

We have noted the initial dissatisfaction exhibited by law enforcement officers caused by the court's decision in *Mapp*. The Ohio Supreme Court in its decision in that case (170 Ohio St. 427) said that it could be reasonably argued that the methods employed to obtain the evidence without a search warrant were such as "to offend a sense of justice." The facts set forth in some other decisions of the Supreme Court of the United States show a shocking disregard of the constitutional rights of our citizens by law enforcement officers in the several states. The federal courts for fifty years have operated under the rule that evidence obtained as a result of unlawful searches and seizures is inadmissible, and Mr. Justice Stewart, in *Elkins* v. *United States* (1960), 364 U. S. 206, 218, said that:

"* * * it has not been suggested either that the Federal Bureau of Investigation has thereby been rendered ineffective, or that the administration of criminal justice in the federal courts has thereby been disrupted. * * *"

The courts of California adopted the rule in 1955. The Attorney General of California, commenting upon the effect of the decision in which the rule was adopted, said that:

"The over-all effects of the *Cahan* decision have been excellent. A much greater education is called for on the part of all peace officers of California. As a result, I am confident they will be much better police officers. I think there is more cooperation with the District Attorneys and this will make for better administration of criminal justice."

To revert to the question whether the search and seizure here can be said to be reasonable because it occurred under "exceptional circumstances," we note that the Supreme Court of the United States has indicated an inclination, under "exceptional circumstances," to consider a search reasonable where there is no search warrant, where there has been no lawful arrest, where there is no probable cause to believe that the one searched has committed a crime and where there is no consent to the search. The existence and nature of the "exceptional circumstances" is best shown in the language of the court itself as follows:

"This is not a case where the officers, passing by on a

street, *hear a shot and a cry for help* and demand entrance in the name of the law. * * *

"Where, as here, officers are not responding to *an emergency,* there must be compelling reasons to justify the absence of a search warrant, as we held in *Johnson* v. *United States, supra.*

"* * *

"* * * Absent *some grave emergency* the Fourth Amendment has interposed a magistrate between the citizen and the police. * * *" (Emphasis added.) Mr. Justice Douglas, for the majority in *McDonald* v. *United States* (1948), 335 U. S. 451.

"* * * Whether there is reasonable necessity for a search without waiting to obtain a warrant *certainly depends somewhat upon the gravity of the offense* thought to be in progress as well as the hazards of the method of attempting to reach it. * * * While I should be human enough to apply the letter of the law with some indulgence to officers acting to deal with *threats or crimes of violence which endanger life or security,* it is notable that few of the searches found by this court to be unlawful dealt with that category of crime. * * * When an officer undertakes to act as his own magistrate, he ought to be in a position to justify it by pointing to *some real immediate and serious consequences* if he postponed action to get a warrant." (Emphasis added.) Mr. Justice Jackson concurring in *McDonald* v. *United States* (1948), 335 U. S. 451.

"* * * if we are to make *judicial exceptions* to the Fourth Amendment * * * it seems to me they should *depend somewhat upon the gravity of the offense.* If we assume, for example, that a *child is kidnaped* and the officers throw a roadblock about the neighborhood and search every outgoing car, it would be a drastic and undiscriminating use of the search. The officers might be unable to show probable cause for searching any particular car. *However, I should candidly strive hard to sustain such an action, executed fairly and in good faith, because it might be reasonable to subject travelers to that indignity if it was the only way to save a threatened life and detect a vicious crime.* But I should not strain to sustain such a roadblock and universal search to salvage a few bottles of bourbon and catch a bootlegger." (Emphasis added.) Mr. Justice Jackson, dissenting in *Brinegar* v. *United States* (1949), 338 U. S. 160.

"* * * Over and over again this court has emphasized that the mandate of the Amendment [Fourth] requires adherence to judicial processes. * * * Only where incident to a valid arrest * * * or in '*exceptional circumstances*,' may an exemption lie, and then the burden is on those seeking the exemption to show the need for it. * * *" (Emphasis added.) Mr. Justice Clark, for the majority in *United States* v. *Jeffers* (1951), 342 U. S. 48.

We have found no reported decision of the Supreme Court of the United States in which that court has held a search to be reasonable without a search warrant, without being incidental to a lawful arrest, without being based upon probable cause to believe that a crime has been committed or by consent.

Upon the facts and circumstances shown in the instant case, known to the officers before the search, we cannot say that the search and seizure here occurred under "exceptional circumstances" so as to furnish excuse for the lack of a search warrant as to all of the items seized.

We conclude that the trial court erred in overruling appellants' motion to suppress the evidence acquired by the unlawful search and seizure, and that it further erred in admitting same as evidence against appellants at their trial. This disposes of the fifth and seventh errors assigned.

The sixth error assigned is that the court erred in permitting the state's witnesses to state in evidence as a part of the state's case in chief that appellant Wesley Call was a parole violator and that Harold Call was a probation violator. Section 2945.59 of the Revised Code provides that evidence of similar offenses may be given to show intent in cases where intent is a necessary element of the prosecution's case. A transcript of the evidence embodied in the bill of exceptions does not disclose that the offenses upon which appellants are on probation and parole are similar to the offenses here. The trial court erred in permitting testimony that Wesley Call was on parole and that Harold Call was on probation.

We must determine then whether such error was prejudicial. The rule in Ohio is that, in order to find that substantial justice has been done an appellant so as to prevent a reversal of the judgment for errors occurring at the trial, the reviewing court must not only weigh the prejudicial effect of those errors

but also determine that, if those errors had not occurred, the jury or other trier of the facts would probably have made the same decision. *Hallworth* v. *Republic Steel Corp.*, 153 Ohio St. 349. We conclude that, had the court not admitted the testimony complained of in this assignment of error, the jury probably would not have reached the same verdicts of guilty reached in this case, and we must conclude, therefore, that this error was prejudicial to the appellants.

Likewise, we conclude that the error of the trial court in overruling appellants' motion to suppress evidence acquired by an unlawful search and seizure, and in admitting same as evidence against the appellants at their trial, was prejudicial to the appellants.

Assignments of error 1, 2, 3 and 4 are to the effect that the verdict and judgment are manifestly against the weight of the evidence and contrary to law. Without the evidence erroneously admitted by the trial court, which we have found to be prejudicial to the appellants, the verdicts of the jury and judgments and sentences of the court are manifestly against the weight of the evidence and are contrary to law.

The eighth assignment of error is for all other errors occurring at the trial and apparent upon the record. This assignment has not been briefed, and we will not search the record in an effort to ascertain such error.

Because the trial court erred to the prejudice of the appellants as hereinbefore set forth and because, in the absence of such errors, the verdicts, judgments and sentences were manifestly against the weight of the evidence lawfully admitted, the verdicts finding appellants guilty of the offenses of carrying concealed weapons and guilty of two counts of burglary, and the court's judgments of conviction and sentences thereon, will be reversed and the causes will be remanded to the Common Pleas Court for a new trial.

*Judgments reversed.*

CRAWFORD and KERNS, JJ., concur.