The STATE of Ohio, Appellee,

v.

LEWIS, Appellant.

[Cite as *State v. Lewis* (1990), 69 Ohio App.3d 318.]

Court of Appeals of Ohio,
Geauga County.

No. 88–G–1494.

Decided Sept. 5, 1990.

*David P. Joyce*, Prosecuting Attorney, and *Dennis M. Coyne*, Assistant Prosecuting Attorney, for appellee.

*John S. Berko* and *Owen C. Neff*, for appellant.

LYNCH, Judge.

Appellant, James C. Lewis, appealed his conviction by a jury for carrying a concealed weapon, in violation of R.C. 2923.12.

On April 23, 1988, appellant was driving from Rome, Ohio, where he had been plowing his godfather's fields all day, to the Mentor Mall to pick up his two daughters. En route, he stopped at Chardon Beverage and purchased a bottle of Harvey's Bristol Cream. Appellant proceeded from Chardon Beverage and turned left onto Center Street. Chardon policeman, Scott A. Hildenbrand, and dispatcher, Rebecca Warner, were on patrol in the area when they saw appellant's vehicle in front of them. Officer Hildenbrand called in a license check on appellant's vehicle at some point prior to stopping him. The license check revealed that the appellant owned the vehicle, appellant's address, the make and year of the vehicle, and that the vehicle was not stolen.

While closely following the appellant who was travelling westbound on Center Street, Officer Hildenbrand observed the appellant go off the road near Chardon Welding Parking lot and weave within his own lane. Officer Hildenbrand defined "off the road" as "the right two wheels travel to the right of the center line [*sic*]." Officer Hildenbrand followed the appellant for nearly a mile before turning on his lights to stop appellant near the State Highway Patrol post.

Appellant had his license ready when the officer approached the vehicle. Detecting an aroma of an alcoholic beverage and noticing that appellant's eyes were bloodshot, the officer asked the appellant if he had been drinking. The appellant admitted to drinking two beers.

Contemporaneous to the stop, while appellant was still sitting in his vehicle, two state trooper vehicles pulled up; a few minutes later, another Chardon police car and a tow truck arrived.

Officer Hildenbrand asked the appellant to exit the vehicle for some field sobriety tests. Appellant exited and went behind his vehicle and stood in front of the officer's patrol car where he did the balance tests, the thirty second one-legged stand and the heel-to-toe. These tests were inconclusive; thus, Officer Hildenbrand asked Trooper Rance to give the appellant the gaze nystagmus test. This test was also inconclusive because the appellant did not follow the instructions. Nevertheless, the officer decided to arrest appellant for DUI.

Trooper Lloyd and Chardon Patrolman Paranish searched appellant's vehicle. Trooper Lloyd searched the inner compartment and found a firearm in the glove compartment. Although Officer Hildenbrand was having trouble remembering at the suppression hearing whether the search was conducted before or after the arrest, he did indicate on cross-examination at the trial of this case that Trooper Lloyd conducted a "weapons search" while he was administering the balancing tests to the appellant.

Dispatcher Warner testified at the suppression hearing that Trooper Lloyd and Patrolman Paranish checked out the vehicle while Officer Hildenbrand was giving appellant the tests. At the time that Warner saw Trooper Lloyd hold up the gun, she believed the appellant had not yet been put in the patrol car but might have already been handcuffed.

The appellant testified that, while Trooper Rance was administering the sobriety tests to him prior to arrest, the other troopers were going through the car, searching the door, under the seats, the glove compartment, and the trunk.

At the trial of this case, Dispatcher Warner testified that she observed appellant's vehicle being searched when Trooper Rance was performing the gaze nystagmus test. Trooper Lloyd testified that he searched the vehicle when Officer Hildenbrand was performing the divided skills test.

After appellant was arrested, he was transported to the police station where he submitted to a breathalyzer test. The result of the breathalyzer test was an .088 reading, which is below the legal limit of .10.

Appellant was not charged with running off the road, weaving in his lane, or driving under the influence, but was charged only with carrying a concealed weapon.

The appellant was indicted on May 19, 1988. On August 11, 1988, appellant filed a motion to dismiss for lack of probable cause which was argued as a

motion to suppress at the hearing. The trial court overruled appellant's motion to dismiss stating that the stop was legal, there was probable cause for the search, the search did not take place until after the arrest occurred, and the search was for the purpose of taking inventory of the contents of the automobile.

On September 9, 1988, the jury found appellant guilty of carrying a concealed weapon, a third degree felony, as charged, and further found that the firearm was loaded. On November 18, 1988, the trial court entered its judgment of conviction, wherein the appellant was sentenced to imprisonment of one year in the penitentiary and costs of the prosecution.

Appellant timely appealed his conviction with the following assignments of error:

"1. The court committed prejudicial error in failing to grant the motion to dismiss, the search and seizure being constitutionally impermissible.

"2. The court committed error prejudicial to the defendant in failing to continue the defense to the following day in order that a witness could appear for the defense."

■ Upon a review of the entire record in this case, we find that appellant was not charged with driving while intoxicated or for any other traffic violation; that the search of the subject vehicle was not done for the safety of any police officer; that such search was not based on any contraband that was in plain view of the police officers; that the search of appellant's vehicle by the police officers was done during the tests administered by other police officers to determine whether appellant was intoxicated and before appellant's arrest for driving while intoxicated; and that, therefore, such search was not an inventory search.

The decisive legal question in this case is, under the facts of this case, when the police officers searched appellant's vehicle before the arrest of appellant for driving while intoxicated and while appellant was outside such vehicle, had the police officers a constitutional right to search such vehicle?

A case with a similar fact pattern with the subject case is *State v. Call* (1965), 8 Ohio App.2d 277, 37 O.O.2d 274, 220 N.E.2d 130, in which an operator of a motor vehicle was arrested for a traffic violation, handcuffed and put into a police vehicle. Three officers were present. The court held that there was no reasonable grounds for a search of the arrested person's vehicle for weapons and such search was held invalid.

Pertinent parts of paragraphs of the syllabus of the *Call* case are as follows:

"1. The protection afforded by the Fourth Amendment of the Constitution of the United States against unreasonable searches and seizures is applicable to searches of motor vehicles.

"2. Where an exemption from the requirement of a search warrant is claimed, the burden is on those seeking such exemption to show the need therefor.

"3. A police officer may not search, or seize articles found in, a motor vehicle following an arrest for 'speeding,' where the circumstances are such that there is no reasonable basis for believing that a search for weapons is necessary for such officer's protection or to prevent an escape, and such officer has no probable cause to believe that a crime had been or is being committed.

"* * *

"5. Cause to believe, not supported by facts which constitute a basis for a reasonable cause for belief, is not sufficient to constitute reasonable cause."

In accord are *State v. Bernius* (1964), 177 Ohio St. 155, 29 O.O.2d 359, 203 N.E.2d 241; *Warrensville Hts. v. Toth* (1974), 42 Ohio App.2d 59, 71 O.O.2d 423, 329 N.E.2d 699; and *State v. Bradshaw* (1974), 41 Ohio App.2d 48, 70 O.O.2d 52, 322 N.E.2d 311.

We have read the cases cited by the prosecuting attorney in support of the trial court's decision in this case concerning such search. Said cases concern personal searches of appellants or plain view of contraband items in a vehicle or on the person of the appellants which we hold are not pertinent to the facts of this case.

For the foregoing reasons, we hold that appellant's first assignment has merit and we sustain such assignment of error.

In the second assignment of error, appellant contends that the court erred in denying him a continuance to the following day so that a witness could appear for this defense.

After the appellant testified, defense counsel informed the court that there was one more witness, Ruth Davis, that the defense wanted to present. The following exchange occurred between the court and defense counsel:

"THE COURT: She's not here?

"MR. NEWMAN: I don't think she's here right now. She was supposed to come between 3:00 and 3:30. But she said she may have a complication because of her husband being in the hospital, having switched from one hospital to another.

"In the event she is not here by three, I would request a recess until tomorrow to complete her.

"THE COURT: Well, it's 2:35 now. She should have been here.

"MR. NEWMAN: Well, I hardly anticipated that the prosecution would not put on all the witnesses that they had on there [*sic*] list. It's going much more rapidly than I ever anticipated a criminal case to ever go.

"THE COURT: How do we know she is going to be here tomorrow?

"MR. NEWMAN: Because Jim Lewis is going to bring her here tomorrow.

"MR. COYNE: Your Honor, all the evidence has been presented. I believe it's overwhelming. I'm not sure another witness is going to help. She had never been subpoenaed. I feel sorry for the woman if her husband is ill and has to change hospitals, but did she even know about today before today? I don't know.

"MR. NEWMAN: Yes, she did. I told her.

"MR. COYNE: When, yesterday?

"THE COURT: I will continue. We will finish the case today.

"MR. COYNE: What time will we start back up?

"THE COURT: Fifteen minutes."

The court did not grant a continuance, but finished the case that afternoon. There is no evidence in the record that the defense objected to this denial of a continuance or proffered what Ruth Davis' testimony would have been.

Whether or not to grant a continuance is solely within the trial court's discretion. Absent an abuse of that discretion, the trial court's decision will not be reversed. Appellant had failed to object to the denial of the continuance, failed to proffer testimony, and has failed to charge or show any abuse of discretion on the part of the trial court in the denial of such continuance. Accordingly, we overrule appellant's second assignment of error.

Because the trial court erred to the prejudice of appellant in admitting evidence obtained by a constitutionally unlawful search of appellant, we hold that there was no other lawfully admitted evidence to support the verdict of the jury. In the absence of such evidence, we hold that the verdict of the jury would be manifestly against the weight of the evidence; therefore, the verdict finding appellant guilty of the offense of carrying a concealed weapon is reversed.

Judgment reversed and final judgment entered for appellant.

*Judgment accordingly.*

CHRISTLEY, P.J., concurs.

FORD, J., concurs with concurring opinion.

JOHN J. LYNCH, J., retired, of the Seventh Appellate District, sitting by assignment.

FORD, Judge, concurring.

While I concur with the majority in its treatment of the first assignment of error, I would embellish its analysis with the observation that, based on the state of the record before us, there was no valid probable cause existing at the specific time in question to justify a search of the vehicle which led to the discovery of the firearm in question. As the Ohio Supreme Court suggested in *State v. Chatton* (1984), 11 Ohio St.3d 59, 11 OBR 250, 463 N.E.2d 1237, there are some discernible limitations to search exercises in lawful detention situations whether measured against the "specific and articulable facts" standard of *Terry v. Ohio* (1968), 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906, 44 O.O.2d 383, 393; the thrust of *Brown v. Texas* (1979), 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357, 362; the Fourth Amendment; or Section 14, Article I of the Ohio Constitution.