THE STATE OF OHIO, APPELLEE, *v.* BRADSHAW, APPELLANT.

(No. 1107—Decided May 31, 1974.)

*Messrs. Openlander, Callahan & Connelly,* for appellant.

*Mr. Chester H. Marcin,* prosecutor, and *Mr. Steven L. Ball,* legal intern, for appellee.

WILEY, J. Defendant, the appellant herein, was arrested for speeding in the city of Perrysburg, at 3 A. M. and,

having been previously arrested for speeding on a prior occasion within one year, was placed in custody upon his failure to post a $100 appearance bond.

His automobile, the trunk of which was partially open and secured only by a string, was driven by a police officer to a private garage, at about 4 A. M., impounded and inventoried as provided by standard police procedure, including the use of an inventory form

Contraband, as indicated by the inventory, was seized and later introduced in evidence, over objection, at the trial of the defendant on the charge of unlawful possession of an hallucinogen. The defendant was found guilty and sentenced. An appeal was duly taken.

Two assignments of error were made:

"1. The trial court erred in overruling the defendant's motion to suppress the evidence taken from the automobile.

"2. By overruling the motion to suppress the evidence, the trial court denied the defendant his right to equal protection of the laws in violation of Article I, Section 2, of the Ohio Constitution and the Fourteenth Amendment to the Constitution of the United States."

The second assignment of error is found not well taken for the reason that the defendant failed to indicate that he was indigent. His argument, that he was denied equal protection of the laws when his automobile was impounded and subjected to a search because he could not post a bail bond, whereas the automobiles of other traffic offenders who could post a bail bond would be neither impounded nor searched, is not persuasive. The $100 bond, established by the court, was reasonable in amount and was applicable to all persons charged with a second offense of speeding within one year. The defendant was released on bond about twelve hours after his arrest.

The first assignment of error squarely presents the issue of whether the "inventory" of an impounded vehicle is an unreasonable search and seizure.[1]

---

[1] There were circumstances at the place of arrest that arguably gave the arresting officer the right to search the automobile as an incident to arrest. See, 45 A. L. R. 3d 581 et seq., Search and Seizure: "Furtive" movement or gesture as justifying police search; 10 A. L.

At the trial, the prosecution specifically stated that no claim of probable cause to search was being made; rather, no "search" was made, only an inventory. Furthermore, it is contended that even if such an inventory is considered to be a search, it is not an unreasonable search and any contraband taken was not an unreasonable seizure.

Many courts have sustained the position of the prosecution. Among the reasons usually advanced are that the search is benign in that it protects the owner, the bailee, the police officer and the public. See cases cited in *United States* v. *Lawson* (C. A. 8, 1973), 487 F. 2d 468, footnote 3; *People* v. *Sullivan* (1971), 29 N. Y. 2d 69, 272 N. E. 2d 464, 48 A. L. R. 3d. 527 and the annotation at 537; *United States* v. *Gerlach* (E. D. Mich. 1972), 350 F. Supp. 180; *Shelton* v. *State* (Tenn. Cr. App. 1972), 479 S. W. 2d 817, *cert. denied* at 409 U. S. 852; *United States* v. *Gravitt* (C. A. 5, 1974), 484 F. 2d 375, *cert denied; People* v. *Trusty* (Colo. 1973), 516 P. 2d 423; *State* v. *Gowans* (1972), 18 Ariz. App. 110, 500 P. 2d. 641, vacated in part at 514 P. 2d. 442; *United States* v. *Rosenberg* (C. A. 5, 1972), 458 F. 2d 1183, *cert. denied* in 409 U. S. 868; *People* v. *Babic* (1972), 7 Ill. App. 3d 36, 287 N. E. 2d 24; *State* v. *Undorf* (1972), 210 Kan. 1, 499 P. 2d 1105; *Roush* v. *State* (Fla. App. 1967), 203 So. 2d 632.

On the other hand, many courts have decided that a warrantless inventory search is an unreasonable search and seizure, violative of Fourth Amendment rights. See cases cited in footnote 4, *United States* v. *Lawson, infra;* see, also, *Amador-Gonzalez* v. *United States* (C. A. 5, 1968), 391 F. 2d 308; *Pigford* v. *United States* (D. C. App. 1971), 273 A. 2d 837; *United States* v. *Pannell* (D. C. App. 1969), 256 A. 2d 925; *Carpio* v. *Superior Court* (1971), 19 C. A. 3d 790, 97 Cal. Rptr. 186; *People* v. *Burke* (1964), 61 C. 2d

---

R. 3d 314 et seq., lawfulness of search of motor vehicle following arrest for traffic violation.

However, no search was made at the scene and the arresting officer permitted the defendant to drive his automobile to the police station, while being closely escorted by two police cars.

575, 394 P. 2d 67; *People* v. *Nagel* (1971), 17 C. A. 2d 492, 95 Cal. Rptr. 129; *People* v. *Heredia* (1971), 20 C. A. 3d 194, 97 Cal. Rptr. 488; *People* v. *Greenwood* (1971), 174 Colo. 500, 484 P. 2d 1217; *State* v. *Keller* (1973), 265 Or. 622, 510 P. 2d 568.

In a recent case, the Supreme Court of the United States upheld a warrantless search of an automobile in a factual situation somewhat similar to the typical "inventory search" of an impounded vehicle. *Cady* v. *Dombroski* (1973), 413 U. S. 433, 93 S. Ct. 2523. In *Cady*, a warrantless search was made of the trunk of an automobile, driven by a Chicago police officer who was arrested and incarcerated for drunken driving. The next day, the defendant's automobile was searched by police, at the garage where the automobile had been towed the night before, to secure the revolver believed to be carried at all times by Chicago police officers. The justification for the search was the concern for the safety of the general public if an intruder should obtain the revolver from the trunk of the automobile.

Bloodied items found during the search were admitted in evidence at the later murder trial of the officer. (The report of the case does not indicate whether the revolver was found.) Cf. *Harris* v. *United States* (1968), 390 U. S. 234 (plain view; benign act) and *Cooper* v. *California* (1967), 386 U. S. 58 (auto held under a state forfeiture statute).

For warantless searches of the person which were upheld by the Supreme Court of the United States, see *United States* v. *Robinson* (1973), 94 S. Ct. 467 and *Gustafson* v. *Florida* (1973), 94 S. Ct. 488. In the search incident to an arrest, of course, a search may be made of the area within the control of the one arrested. See *United States* v. *Robinson, supra* at 471. See, also, *State* v. *Dempsey* (1970), 22 Ohio St. 2d 219.

The Supreme Court of the United States has not ruled directly on the issue presented in the case *sub judice*—see *Harris* v. *United States*, 390 U. S. 234, 236, 88 S. Ct. 992, 993; cf. *Cady* v. *Dombroski, supra*—nor has the Sup-

reme Court of Ohio; see *State* v. *Reynolds* (1972), 32 Ohio St. 2d 101, at 106:

"* * * we find it unnecessary to pass on the state's contention that the search was justified for the purpose of inventorying the contents of the vehicle for safekeeping."

We call attention to the thoughtful discussions of "Benign Purpose—Inventory Searches" in 87 Harv. L. R. 835, 848 (1974), and the article "The Inventory, Search of an Impounded Vehicle," 48 Chi.-Kent L. R. 48 (1971). See, also, annotation 48 A. L. R. 3d 537 *et seq.,* Lawfulness of "Inventory Search" of Motor Vehicle Impounded by Police.

For an excellent discussion of the same problems arising from warrantless inventory searches, see *United States* v. *Lawson* (C. A. 8, 1973), 487 F. 2d 468.

In *Lawson,* the district court granted defendant's motion to suppress (S. D. 1973), 355 F. Supp. 101, and the United States Court of Appeals affirmed. Defendants were arrested for passing insufficient fund checks at Aberdeen, South Dakota. Their automobile, parked at a motel with the doors and trunk locked, was impounded and taken to the police station. The next day, it was searched pursuant to a written regulation of the Aberdeen police department for the purpose of preparing an inventory. A .22 calibre revolver was found and criminal charges were brought. As in the case *sub judice,* no assertion was made that the search could be justified on any ground other than as an inventory search.

We quote extensively from *United States* v. *Lawson, supra* at 469:

"* * * The Government specifically disavows any contention that the search was incident to a lawful arrest, and it is equally clear from the record that there existed no probable cause to support a search of the locked trunk. Rather, the Government argues that the search and seizure should be upheld because, '(t)he discovery of the firearm was made while the Police Officers were following a legitimate, reasonable and necessary police function.' The Government argues that when the inventory is carried out

pursuant to a standard uniform procedure, it is reasonable; thus the evidence seized should be admissible. This position finds support in the language of some of the cases that have considered the problem of an inventory search.[2] However, the contrary position, that an inventory search is unreasonable, has been taken by other courts.[3]

"The problem of automobile searches and their relationship to the warrant requirements of the Fourth Amendment has been a perplexing one for the courts. Without the assistance of definitive guidelines (indeed guidelines attempting to apply the general requirements of the Fourth Amendment in this area are likely to be of little assistance in the varying factual circumstances presented by concrete cases), the courts have attempted to apply general Fourth Amendment principles, assisted by what applicable language they could discern from the Supreme Court cases, to resolve situations probably never contemplated by the drafters of the Fourth Amendment or the courts. Lower courts have been hampered in this process by a seeming lack of consistency in the Supreme Court cases dealing with automobile searches, the inconsistencies no doubt being due to the manifold considerations

[2] "See *United States* v. *Kelehar*, 470 F. 2d 176 (5th Cir. 1972); *United States* v. *Mitchell*, 458 F. 2d 960 (9th Cir. 1972); *United States* v. *Pennington*, 441 F. 2d 249 (5th Cir.), cert. denied, 404 U. S. 854, 92 S. Ct. 97, 30 L. Ed. 2d 94 (1971); *United States* v. *Boyd*, 436 F. 2d 1203 (5th Cir. 1971); *People* v. *Sullivan*, 29 N. Y. 2d 69, 323 N. Y. S. 2d 945, 272 N. E. 2d 464 (1971); *Cabbler* v. *Commonwealth*, 212 Va. 520, 184 S. E. 2d 781 (1971), cert. denied, 405 U. S. 1073, 92 S. Ct. 1501, 31 L. Ed. 2d 807 (1972); *State* v. *Wallen*, 185 Neb. 44, 173 N. W. 2d 372, cert. denied, 399 U. S. 912, 90 S. Ct. 2211, 26 L. Ed. 2d 568 (1970); *State* v. *Criscola*, 21 Utah 2d 272, 444 P. 2d 517 (1968); *State* v. *Montague*, 73 Wash. 2d 381, 438 P. 2d 571 (1968); *Heffley* v. *State*, 83 Nev. 100, 423 P. 2d 666 (1967); *St. Clair* v. *State*, 1 Md. App. 605, 323 A. 2d 565 (1967)."

[3] "See, *Williams* v. *United States*, 412 F. 2d 729 (5th Cir. 1969); *Dodge* v. *Turner*, 274 F. Supp. 285 (D. Utah 1967); *Boulet* v. *State*, 17 Ariz. App. 64, 495 P. 2d 504 (1972); *Mozzetti* v. *Superior Court*, 4 Cal. 3d 699, 94 Cal. Rptr. 412, 484 P. 2d 84 (1971) (overruling prior California decisions to the contrary); *Mayfield* v. *United States*, 276 A. 2d 123 (D. C. App. 1971)."

that bear with unequal weight on varying aspects of the problem. This was recognized by Justice Rehnquist, writing for the majority in *Cady* v. *Dombroski,* 413 U. S. 433, 439, 93 S. Ct. 2523, 2527, 37 L. Ed. 2d. 706 (1973):

" 'While these general principles are easily stated, the decisions of this Court, dealing with the constitutionality of warrantless searches, especially when those searches are of vehicles, suggest that this branch of the law is something less than a seamless web.'

"The Supreme Court has not decided whether an inventory search, without a warrant or justified by a recognized exception to the warrant requirement, would be considered reasonable under the Fourth Amendment. *Harris* v. *United States,* 390 U. S. 234, 236, 88 S. Ct. 992, 993, 19 L. Ed. 2d. 1067 (1968) explicitly stated that the 'admissibility of evidence found as a result of a search under the police regulation is not presented by this case.' "

At page 475, the court stated:

"The reasoning of the cases upholding inventory searches has been, except where not calling the procedure a search, that the police procedure is a reasonable one to protect the valuable property of an accused while in custody and to protect the police departments from groundless claims for 'lost' property.[4] The soundness of this conclusion has been questioned.[5]

" (3, 4) Moreover, such a conclusion does not seem adequate to justify the substantial invasion of Fourth Amendment protections involved here. The essential test of the validity of a search is reasonableness, yet the standard of reasonableness must be evolved in light to the Fourth Amendment, not in light of what our view of reasonable police procedures might be. In addressing itself to a con-

[4]"See *e. g., United States* v. *Kelehar, supra,* at 178 of 470 F. 2d; *State* v. *Montague,* 438 P. 2d at 574; *State* v. *Wallen,* 173 N. W. 2d at 374."

[5]"*Boulet* v. *State,* 495 P. 2d at 508-509; *Mozzetti* v. *Superior Court,* 94 Cal. Rptr. at 417-418, 484 P. 2d at 89-90. *See also Szwajkowski, The Aftermath of Cooper* v. *California,* 1968 U. Ill. L. F. 401, 407-408 (1968); *Nelson, Chimel* v. *California, A Potential Roadblock to Vehicle Searches;* 17 U. C. L. A. L. Rev. 626, 642 (1970)."

tention that it was reasonable to search an entire house without a warrant when a suspect is arrested in the house, the Supreme Court said in *Chimel* v. *California*, 395 U. S. 752, 764-765, 89 S. Ct. 2034, 2041, 23 L. Ed. 2d 685 (1969):

" 'But that argument is founded on little more than a subjective view regarding the acceptability of certain sorts of police conduct, and not on considerations relevant to Fourth Amendment interests. Under such an unconfined analysis, Fourth Amendment protection in this area would reach the evaporation point.'

"We think this is a persuasive refutation of the Government's argument that because it is a 'reasonable' police procedure it should be upheld under the Fourth Amendment. Obviously the police have an interest in safeguarding themselves against groundless claims. Just as obviously, and more importantly in terms of the Fourth Amendment, owners and operators of motor vehicles have an interest in safeguarding their possessions from unreasonable police intrusions. A rule that upon a showing of a legitimate governmental interest, the constitutional protections of citizens must give way, would eliminate those protections in the very situations for which they were intended. For the police practice considered here to be found reasonable under the Fourth Amendment, absent a warrant or falling within a recognized exception to the warrant requirement, there must be a minimal interference with the individual's protected rights. A Police duty to safeguard the owner's property does not automatically give the police the right to search.

" ' (L)awful custody of an automobile does not of itself dispose with constitutional requirements of searches thereafter made of it,' * * * the reason for and the nature of the custody may constitutionally justify the search.

"*Cooper* v. *California, supra,* at 61 of 386 U. S., at 791 of 87 S. Ct.

"(5) It is unnecessary for us to determine all the reasons for, and natures of police custody that might justify a search; here the only justification for the search is bare police custody of the vehicle. While police custody may jus-

tify reasonable measures to protect the vehicle itself (*i. e.*, rolling up the windows and locking the doors), or property within plain view in the automobile, such reasonable protective measures do not extend to breaking into a locked trunk. We find ourselves in agreement with the position taken by the California Supreme Court in addressing the contention that the inventory procedures are necessary and reasonable:

" 'This contention is rebutted by recognition of the vehicle owner's countervailing interest in maintaining the privacy of his personal effects and preventing anyone, including the police, from searching suitcases, and other closed containers and areas in his automobile at the time the police lawfully remove it to storage. In weighing the necessity of the inventory search as protection of the owner's property against the owner's rights under the Fourth Amendment, we observe that items of value left in an automobile to be stored by the police may be adequately protected merely by rolling up the windows, locking the vehicle doors and returning the keys to the owner. The owner himself, if required to leave his car temporarily, could do no more to protect his property.'

"*Mozzetti* v. *Superior Court*, 94 Cal. Rptr. at 417, 484 P. 2d at 89; *accord Boulet* v. *State*, 495 P. 2d at 509.

"It is not as obvious to us, as it appears to be to some courts, why the inventory procedure offers the police any more protection against false claims than would a standard policy of locking the car and returning the keys to the owner; or of allowing the owner to make arrangements himself for the removal and storage of his vehicle."

Further, at page 476, it was said:

"Several approaches to the inventory search problem have been suggested.⁶

---

⁶"*See*, Miles and Wefing, The Automobile Search and the Fourth Amendment; A Troubled Relationship, 4 Seton Hall L. Rev. 105 (1972); Nelson, *supra* n. 9; Szwajkowski, *supra* n. 9; Comment, Police Inventories of the Contents of Vehicles and the Exclusionary Rule, 29 Wash. & Lee L. Rev. 197 (1972); Comment, The Inventory Search of an Impounded Vehicle 48 Chi.-Kent L. Rev. 48 (1971); Note, The Inventory Search of an Automobile, 7 U. Rich. L. Rev. 151 (1972)."

"Some of the possible approaches, as already noted in this opinion, do not properly focus on the considerations important, in this area. One possible approach would be to declare all inventory searches reasonable. This would not comport with our view of the Fourth Amendment protections against unreasonable searches and seizures. Another, as suggested in *Mayfield* v. *United States*, 276 A. 2d 123 (D. C. App. 1971), and noted approvingly by Judge Ely in his dissent in *United States* v. *Mitchell, supra* at 966 of 458 F. 2d, would be to allow the police to inventory, but require suppression of any evidence obtained as a result of the inventory. Such an approach, while perhaps possessing some appeal, conflicts with the underlying rationale of the Fourth Amendment. It is the search and seizure itself which must be determined reasonable, not the subsequent use of evidence obtained to secure conviction of a crime. This approach would abandon the Fourth Amendment as a protection against invasion of privacy by government officials.

"Another approach, which we consider but do not adopt, would be to declare all inventory searches unreasonable. Just as we do not view all inventory searches as reasonable, to enunciate a rule holding them all unreasonable would often ignore legitimate reasons that could exist in particular cases to uphold an inventory search.

"(7) We think the proper approach in this area is to assess the reasonableness of the police conduct in light of all the circumstances of the case, without giving effect to the presence or absence of a police regulation. This approach does not have the surety of a rule declaring all inventory searches to be reasonable or unreasonable, and must to some extent leave law enforcement officials with some uncertainty as to what will be considered reasonable or unreasonable.

"This, however, appears to be a fact of life when dealing with Fourth Amendment problems in a variety of contexts. When unsure as to the legality of their contemplated conduct, it is always open to the police to attempt to secure a warrant in order to have a prior judicial determina-

tion of the reasonableness of their proposed conduct, though in many instances the exigencies of the situation may preclude such a course. We do not believe it possible for this court to settle this area of the law. We do think, however, that it should only be in the atypical case that police officers would find it necessary to conduct a general inventory search of an impounded vehicle. The owner or operator of a vehicle may be able to take reasonable steps to safeguard his property at the time of arrest, thus obviating the necessity of impoundment in that instance, unless, of course, the automobile has been impounded as evidence, or pursuant to a forfeiture statute. If the impounding is done for the stated reason, the protection of the owner's property, it is only reasonable that the owner be allowed to choose whether or not he wished his car impounded. * * *''

The defendant herein was somewhat belligerent and attempted to give the officers a ''hard time'' at the time of the arrest; moreover, he told them on several occasions that he was going to hold them responsible for the property in his automobile. Nevertheless, under all the facts of the case, weighing the interests of the defendant as to unreasonable searches and seizures against the interests of the police department in protecting themselves, the bailee, the owner of the property, and the general public, we find the balance in the favor of the defendant. We do not state that the officers had no duty to protect the car and its contents under these circumstances.

The officers could have taken the automobile to a garage for safe keeping, particularly if they had conferred with the defendant as to whether or not they should have left it on the street or taken it to a garage where greater protection could have been given. If the officer, in transporting the automobile to the garage for safe keeping under such circumstances had observed the marijuana cigarette in plain view on the dashboard of the automobile, or even if he had noted the bag or article of contraband protruding from under the front seat of the automobile on his trip to the garage, we would conclude that the items so seiz-

ed could have been properly admitted into evidence.

Police custody of an automobile and the duty of the police to safeguard the owner's property while it is in the custody of the police justify reasonable measures to protect the vehicle and the property within the vehicle, but such does not give the police the right to make a detailed inventory search. The examination of the automobile under bright lights, the looking into the glove compartment, under the front seat, into the trunk, even though the lid thereto was secured only by a string and was partially opened, and the moving and examination into the carton situated in the trunk were not justified under any of the recognized exceptions to the requirement of a search warrant.

This determination appears to be in keeping with the recent pronouncements of the Supreme Court of Ohio in *State* v. *Reynolds, supra* and *State* v. *Madgett,* 22 Ohio St. 2d 148. For appellate decisions, see *State* v. *Call* (1965), 8 Ohio App. 2d 277; *State* v. *Terry* (1966), 5 Ohio App. 2d 122, *aff.* in 392 U. S. 1; *State* v. *Twitty* (1969), 18 Ohio App. 2d 15; *State* v. *Fultz* (1968), 13 Ohio St. 2d 79.

The judgment of the Perrysburg Municipal Court is reversed and the cause is remanded for a new trial.

*Judgment reversed.*

POTTER, P. J., and BROWN, J., concur.