STATE, Plaintiff in error, v. McDOUGAL, Defendant in error.

*No. State 25. Argued April 9, 1975.—Decided May 6, 1975.*
(Also reported in 228 N. W. 2d 671.)

For the plaintiff in error the cause was argued by *Thomas J. Balistreri*, assistant attorney general, with whom on the briefs was *Robert W. Warren*, attorney general.

For the defendant in error there was a brief by *Patrick R. Doyle* of La Crosse, and oral argument by *Daniel B. Watson* of Gays Mills.

BEILFUSS, J. The issues raised on this appeal deal only with the existence and validity of an "inventory search." There is no attempt by the state to justify the intrusion into the automobile as a consent search, a search incident to arrest, a probable cause search, an exigent circumstances search, or anything other than an inventory search. The record clearly indicates that due to the lack of consent, the time and place of the intrusion, and the general lack of any other mitigating circumstances, no other justification can arguably be found.

The state contends that an inventory of a motor vehicle is not a "search" in the constitutional sense, and that therefore state and federal restrictions and safeguards regarding searches and seizures are inapplicable. The defendant takes the opposite view, contending that the intrusion is a "search," and hence is subject to constitutional restraints, especially the requirement of reasonableness.[2]

---

[2] United States Constitution, Amendment, art. IV: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

In *State v. Dombrowski* (1969), 44 Wis. 2d 486, 171 N. W. 2d 349, the defendant, an out-of-state police officer, had been taken into custody after he became intoxicated and ran his car into a ditch. The car was disabled and immovable. The local authorities were of the impression the out-of-state officer had his service revolver with him at all times and searched the car primarily to find the revolver so that it would not fall into unauthorized hands. During the search for the revolver in the trunk of the car the police found evidence that eventually tended to implicate the defendant in a murder charge.

The majority of this court concluded that such conduct did not constitute a "search," relying on *Edwards v. State* (1968), 38 Wis. 2d 332, 338, 156 N. W. 2d 397, for the proposition that, " 'A search implies a prying into hidden places for that which is concealed,' " and on *Haerr v. United States* (5th Cir. 1957), 240 Fed. 2d 533, 535, for the statement:

"A search implies an examination of one's premises or person with a view to the discovery of contraband or evidence of guilt to be used in prosecution of a criminal action. The term [search] implies exploratory investigation or quest. . . ."

The majority's conclusion was upheld in habeas corpus proceedings before the Federal District Court for the Eastern District of Wisconsin.[3] However, both the Seventh Circuit Court of Appeals and the United States Supreme Court, in later proceedings in the same case,

---

Wisconsin Constitution, art. I, sec. 11: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

[3] *Dombrowski v. Cady* (1970), 319 Fed. Supp. 530, 532.

specifically refused to reach the issue because the state had conceded that a "search" was involved.[4]

In *State v. McCarty* (1970), 47 Wis. 2d 781, 786, 177 N. W. 2d 819, and *Warrix v. State* (1971), 50 Wis. 2d 368, 376, 184 N. W. 2d 189, this court expressly reaffirmed its holding in *Dombrowski*. In *Warrix*, at pages 376 and 377, however, the court stated with respect to searches of vehicles being kept for safekeeping by police while the owner or operator is in jail:

". . . Many times claims against the police have been made by the accused that personal property has disappeared from his car while he and the car were in police custody. To protect the police from such claims, a custodial search and inventory may be made of the personal property in a car which can be easily removed. . . . As in any other search, the reasonableness depends upon the circumstances in each case. Here, we hold the searches were reasonable."

The last two quoted sentences clearly indicate the inventory search is considered a search, albeit an exception to the warrant requirement. Because of this apparent conflict in the decisions, and because of the significance of the question involved, it is desirable that the court should undertake a re-examination of the problem.

Generally speaking, the state and federal cases from other jurisdictions split on this question. One group holds, quite simply, that a proper police inventory (*i.e.,* one not a mere subterfuge for an exploratory, evidence-seeking intrusion) is not a "search," but merely a procedure for the protection of the police and the owner.[5]

---

[4] *Dombrowski v. Cady* (1972), 471 Fed. 2d 280, 283, certiorari granted; *Cady v. Dombrowski* (1973), 413 U. S. 433, 442, 93 Sup. Ct. 2523, 37 L. Ed. 2d 706.

[5] *See: Lowe v. Caldwell* (D. C. Ga. 1973), 367 Fed. Supp. 46; *People v. Sullivan* (1971), 29 N. Y. 2d 69, 272 N. E. 2d 464; *State v. Wallen* (1970), 185 Neb. 44, 173 N. W. 2d 372; *Mackall v. State* (1969), 7 Md. App. 246, 255 Atl. 2d 98.

These cases generally draw their support from *Harris v. United States* (1968), 390 U. S. 234, 88 Sup. Ct. 992, 19 L. Ed. 2d 1067, a per curiam decision wherein the United States Supreme Court held that where a piece of evidence was discovered by a police officer who, after searching an impounded vehicle pursuant to a police regulation, while opening a door to roll up the window and lock such door, noticed the evidence, a registration card, lying face up on the metal stripping over which the door closed, such evidence was admissible and was not the result of a search. The court emphasized, however, that the basis of its decision was not the fact that the search was pursuant to a police regulation on impounded cars, but rather was that, while attempting to lock the car to protect it, the card came within the "plain view" of the officer while he had a right to be in the position to have such view. We do not believe *Harris* is absolute authority for the proposition that inventory searches are not subject to fourth amendment strictures.

Courts subscribing to the opposite view generally hold that the intrusion is a "search," and then proceed to determine whether it was reasonable under the circumstances and hence not violative of constitutional limitations. A leading case is *Mozzetti v. Superior Court* (1971), 4 Cal. 3d 699, 704–706, 94 Cal. Rptr. 412, 484 Pac. 2d 84, where the Supreme Court of California stated:

". . . several Courts of Appeal have adhered to a circumscribed semantic approach in defining the scope of the Fourth Amendment's prohibition against unreasonable searches and seizures. Such a concept was expressly rejected by the United States Supreme Court in *Terry v. Ohio* (1968), 392 U. S. 1 [20 L. Ed. 2d 889, 88 S. Ct. 1868]. Responding to the government's view that police stop-and-frisk activity was not within the scope of the Fourth Amendment, the court stated: 'In our view the sounder course is to recognize that the

Fourth Amendment governs all intrusions by agents of the public upon personal security, and to make the scope of the particular intrusion, in light of all the exigencies of the case, a central element in the analysis of reasonableness. [Citations.] This seems preferable to an approach which attributes too much significance to an overly technical definition of "search". . . .'

"It seems undeniable that a routine police inventory of the contents of an automobile involves a substantial invasion into the privacy of the vehicle owner. Regardless of professed benevolent purposes and euphemistic explication, an inventory search involves a thorough exploration by the police into the private property of an individual. In that process suitcases, briefcases, sealed packages, purses—anything left open or closed within the vehicle—is subjected without limitation to the prying eyes of authorities. Merely because the police are not searching with the express purpose of finding evidence of crime, they are not exempt from the requirements of reasonableness set down in the Fourth Amendment. Constitutional rights may not be evaded through the route of finely honed but nonsubstantive distinctions.

"Purely and simply the police inventory conducted here was a police search. Therefore, we disapprove those cases which have suggested that a police inventory may be validated without reference to the requirements of the Fourth Amendment." [6]

Two United States Supreme Court decisions lend credence to the proposition that an auto inventory by police is a search. In *Preston v. United States* (1964), 376 U. S. 364, 84 Sup. Ct. 881, 11 L. Ed. 2d 777, the defendants were arrested for vagrancy and their auto was im-

---

[6] *See also: United States v. Lawson* (8th Cir. 1973), 487 Fed. 2d 468; *People v. Willis* (1973), 46 Mich. App. 436, 208 N. W. 2d 204; *State v. Nemrod* (1973), 85 N. M. 118, 509 Pac. 2d 885; *Fruit v. State* (Okla. Crim. App. 1974), 528 Pac. 2d 331.

Some cases dealing with inventory searches apply constitutional standards without ever expressly deciding whether the intrusion is in fact a "search." *See: State v. Keller* (1973), 265 Or. 622, 510 Pac. 2d 568; *State v. Gwinn* (Del. Supr. 1972), 301 Atl. 2d 291.

pounded and searched. In analyzing the case, the court stated that "searches of motorcars must meet the test of reasonableness under the Fourth Amendment before evidence obtained as a result of such searches is admissible." *Id.* at page 366.

In *Cooper v. California* (1967), 386 U. S. 58, 87 Sup. Ct. 788, 17 L. Ed. 2d 730, the defendant was arrested on a charge of selling narcotics and his vehicle was impounded pursuant to a state law requiring any officer making a narcotics arrest to impound any vehicle used to store, conceal, transport, sell or facilitate the possession of narcotics "to be held as evidence until a forfeiture has been declared or a release ordered." California Health & Safety Code, sec. 11611. The court clearly seems to have treated the intrusion as a "search," thereby applying the fourth amendment standard of reasonableness:

". . . It is no answer to say that the police could have obtained a search warrant, for '[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.' *United States v. Rabinowitz,* 339 U. S. 56, 66. Under the circumstances of this case, we cannot hold unreasonable under the Fourth Amendment the examination or search of a car validly held by officers for use as evidence in a forfeiture proceeding." *Cooper, supra,* page 62.

We conclude that the latter line of cases not only compels the conclusion that an inventory search is a "search," but also represents the better reasoned approach. An inventory search can be a serious intrusion into the private affairs of the individual. Cases holding that such conduct is not a search limit their inquiry to the question of whether the search is a bona fide inventory. Cases taking the opposite view consider that question, but also concern themselves with the "reasonableness" of the intrusion, *i.e.,* once it is established that it is not improper to

conduct an inventory, the question becomes whether the manner in which the inventory is conducted, its scope, is reasonable. We believe the severity of the intrusion and its possibility for abuse requires this double–barreled protection.

As we view the problem, there are essentially two aspects to the question of reasonableness. First, whether the intrusion was reasonable in the first instance, and second, whether the scope of the intrusion is reasonable. We consider here whether the scope of the search was reasonable, assuming the inventory search itself was justified.

The determination of what conduct amounts to an unreasonable search and seizure depends upon the particular facts of each case.[7] The very fact that an automobile rather than a home is involved is a significant factor.[8] However, "The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." [9] What is required is a balancing of the state's need to search and the individual's right to be free from intrusion.

The cases that discuss the permissible scope of inventory searches generally conclude that examinations of the contents of closed suitcases and other containers is unreasonable. In *Mozzetti v. Superior Court, supra,* pages 707, 708, the court stated:

"We have no doubt that the police, in the course of such valid protective measures, may take note of any personal property in plain sight within the automobile being taken into custody. Any objects clearly visible

[7] *Ker v. California* (1963), 374 U. S. 23, 33, 83 Sup. Ct. 1623, 10 L. Ed. 2d 726; *Warrix v. State* (1971), 50 Wis. 2d 368, 376, 377, 184 N. W. 2d 189; *Alston v. State* (1966), 30 Wis. 2d 88, 95, 140 N. W. 2d 286.

[8] *Preston v. United States, supra,* pages 366, 367.

[9] *Coolidge v. New Hampshire* (1971), 403 U. S. 443, 461, 462, 91 Sup. Ct. 2022, 29 L. Ed. 2d 564.

without probing—including the suitcase in this instance—may be listed in an inventory or other police report. (See *Harris v. United States* (1968), *supra,* 390 U. S. 234, 236 [19 L. Ed. 2d 1067, 1069].) What concerns us here is the reasonableness of the search *into* the closed suitcase.

"It is significant that all but two of the Court of Appeal opinions relied upon by the People as authority for the inventory search of vehicles in lawful police custody involved inventories made after the driver of the vehicle was arrested. . . . Thus, in those circumstances, . . . the drivers of the vehicles were on the scene and the police could have readily ascertained their preference for the care of their personal property. There is little doubt that all of them would have preferred, for protection of their property, that the police simply close the windows and lock the doors, rather than search the contents of their cars. Nevertheless, in not one of those cases did the Court of Appeal suggest that the police might have inquired of the owner what he wanted done to safeguard his property. Thus we find unpersuasive the contention made by the People that the inventory of contents not within plain sight is reasonable because it is necessary to protect the property for the benefit of the vehicle owner."

In *State v. Keller, supra,* page 626, the Supreme Court of Oregon held, in a case where an officer, conducting the inventory of an auto, opened a tackle box which was bound shut with wire:

". . . The officers testified they were not searching for evidence, but were only inventorying the automobile's contents. With no exigent circumstances present they could have easily inventoried 'one fishing tackle box,' along with other items in plain view. . . ."

In *State v. Gwinn, supra,* pages 293, 294, the Delaware Supreme Court stated:

". . . it is clear that the police inventory search of the contents of the defendants' automobile was reasonable under the circumstances, there having been a lawful arrest and impoundment, and there having been no in-

dication that the inspection was a search for evidence and not a bona fide inventory for the stated protective purposes. Thus, any contraband coming into the 'plain view' of the officer during the inventory was subject to seizure and use in a criminal prosecution under the rules here approved.

"This brings us to the question of whether the contents of the closed satchel found in the trunk of the automobile came within the 'plain view' doctrine. We think not. The record indicates nothing unusual or suspicious about the satchel. While the satchel itself was in 'plain view' of the officer as he inventoried the contents of the auto trunk, the contents of the satchel were not in his 'plain view' and do not fall within that doctrine.

"The opening of the satchel and an inventory of its contents were not necessary for the stated protective purpose. An effective sealing device or chain-lock device suitable for suitcases and other baggage found in a motor vehicle during an inventory would have sufficed for the security purposes sought. A detailed inventory of the contents of baggage appear to be an impractical and unnecessary, and therefore unreasonable, intrusion under the circumstances. Baggage usually contains innumerable personal items. The police should be relieved of the too-burdensome obligation of such inventory; and the citizen should be relieved of such impractical and unnecessary intrusion of his privacy. In this connection, it is noteworthy that towaway and impoundment are daily consequences of certain parking violations."

The essence of these and other cases [10] so holding is that the objects sought to be achieved by the inventory search—protection of the police from claims of theft and protection of the defendant's property—do not usually require an inspection of closed suitcases and containers. We conclude this principle holds true in this

---

[10] *People v. Grana* (Colo. Sup. Ct. 1974), 527 Pac. 2d 543; *Mestas v. Superior Court* (1972), 7 Cal. 3d 537, 102 Cal. Rptr. 729, 498 Pac. 2d 977; *State v. Bradshaw* (1974), 41 Ohio App. 2d 48, 322 N. E. 2d 311. *Contra, State v. Vigil* (1974), 86 N. M. 388, 524 Pac. 2d 1004.

case. The sheriff's department could have simply inventoried "two green suitcases." As far as the protection of the defendant's property is concerned, the fact that all of the contents of the car, including firearms and ammunition, were left in the car after the inventory indicates that there was no need to examine the contents of the suitcases. As far as possible claims against the officers are concerned, the sheriff could easily have inquired of the defendant whether he desired an inventory of the suitcases' contents. Furthermore, the officers would be just as well protected against claims of theft by inventorying and sealing the closed suitcases as by inventorying their contents.

We recognize the right of the police to conduct an inventory search of an impounded vehicle to protect themselves against false claims of loss of property while the vehicle is in police custody, and conclude the inventory search of the vehicle in question as to all items in plain view was proper. However, in view of the federal and state prohibitions against unreasonable intrusions into the privacy of individuals, the police cannot engage in an unlimited search under the guise of a police inventory search. We have no doubt that false claims of loss of property have been made against police officers; however the incidence of such claims (none have reached this court) is not such that we should countenance unreasonable invasions of the privacy of others. The police can take reasonable steps to conduct a police inventory to protect themselves against false claims but not unreasonable ones. Here, we think, the examination of locked suitcases was unreasonable. The fact that keys to the suitcases were found in the glove compartment does not make the intrusion any more reasonable. The keys could easily have been inventoried and kept with the defendant's wallet, his pocket comb and fountain pen. To most people the contents of their

locked suitcases or traveling bags are or can be extremely personal. To have these items examined and handled by strangers can cause embarrassment and humiliation. It is this type of invasion into one's privacy that our constitutions sought to prohibit.

Nor are we convinced that the police were benevolently trying to protect the contents of the car for the benefit of the owner. All of the items in the car except those that might be evidence of the possession of marijuana were not seized or otherwise protected. They were all left in the car which the police claim could not be locked. These items included two firearms and a substantial quantity of ammunition. The car was taken to a junkyard and for at least a part of the time left out in the open and exposed to the elements to the extent the engine block cracked and broke. This is hardly consistent with protection for the owner.

*By the Court.*—Order affirmed.

ROBERT W. HANSEN, J. *(dissenting)*. The examination by the police of the contents of the two suitcases that were in police custody was entirely proper for two reasons:

1. *This was a valid custodial search and inventory of personal property in police custody.*

The automobile driven by defendant, plus the two locked suitcases and the keys to open the suitcases, came into police custody for safekeeping purposes when the defendant was placed in jail custody. Under these circumstances, our court has held that ". . . one of the custodial requirements is the inventorying of possessions belonging to the accused and placing them in safekeeping during his [the defendant's] custody in jail." [1]

So the police were here required to inventory and subsequently account for articles of personal property

---

[1] *Warrix v. State* (1971), 50 Wis. 2d 368, 376, 184 N. W. 2d 189.

that came into their custody when the defendant was placed in jail. Ordinarily, this duty to inventory and account involves items of personal property carried on the person of the jailed defendant.[2] However, as our court has held: "The purpose and justification of a custodial search of a jailed person also applies to the accused's automobile which is taken into custody by the police for safekeeping while the accused is in jail custody."[3] The reason for placing this duty upon the police, our court has held, is that "Many times claims against the police have been made by the accused that personal property has disappeared from his car while he and the car were in police custody."[4] Thus, our court has held: "To protect the police from such claims, a custodial search and inventory may be made of the personal property in a car which can be easily removed."[5] With the obligation to subsequently account for items placed in police custody, such authority becomes an obligation, required by prudent police and custodial procedures.

For the court-specified purpose of protecting against future claims of impounded property being missing, such inventorying goes to contents, as well as container. To list "1 purse" or "1 pocketbook" would provide no protection at all to the police against a claim that $100 or $1,000 was later missing from purse or pocketbook. Similarly, as to the contents of an automobile, to list

[2] *Id.* at page 376, this court holding: "At the police station the defendants were required to empty their pockets as a part of the booking process. . . . It is argued this search is not incidental to their arrest and therefore in violation of their fourth amendment rights. . . . But, this court in *State v. Stevens* (1965), 26 Wis. 2d 451, 460, 132 N. W. 2d 502, has upheld a custodial search of the person . . . ."

[3] *Id.* at page 376.

[4] *Id.* at page 376.

[5] *Id.* at page 376.

"2 unlocked suitcases" would be scant protection against a subsequent claim that currency or valuable jewelry no longer was in the suitcases when they were returned to the defendant owner. Here the two suitcases were locked, but the keys to open them were also in the automobile and also came into police custody. There is no realistic difference between the police possessing a suitcase that is unlocked, and possessing both a locked suitcase and the key with which to open it. Inventorying of contents is required in both situations to protect against future claims of pilferage of contents while the suitcase is in police custody. Exactly so this court held where an attaché case, tobacco can and locked container came into postarrest police custody along with the key to open the container.[6] As in the case before us, the containers, there three and here two, were in the automobile defendant was arrested for driving without a driver's license. In *Soehle,* our court held that there was consent to the search. As to the state's contention that also involved was a custodial inventory search that included the right to open the locked container (the key fitting the lock was found on the person of the defendant), our court held:

"It is true that this court has approved such custodial search of the person or automobile of a jailed person, and stated the reason to be to protect the police as custodians from claims that 'personal property has disappeared from his car while he and the car were in police custody.' That is the law in this state and would be followed if it were applicable. However . . . consent to search was secured . . . ."[7]

In the case before us, with both the locked suitcases and the keys fitting the locks coming into police custody for safekeeping when the defendant was placed in jail

---

[6] *Soehle v. State* (1973), 60 Wis. 2d 72, 208 N. W. 2d 341.

[7] *Id.* at page 82.

custody, the police here had the duty, as well as the right, to inventory all items of personal property, including the contents of the suitcases. It follows, as this court has held, that: "If contraband or evidence or fruits of a crime are found in this process, the discovery does not make the search unreasonable." [8]

2. *The defendant voluntarily consented to the custodial search and inventory of the contents of the suitcases.*

At the time of his arrest, the defendant opened the trunk of the car with his key when the officer indicated his curiosity as to what was in the trunk. There were revealed two green suitcases. The defendant promptly volunteered that they did not belong to him. When the police officer also indicated that he was curious as to the contents of the two suitcases, the defendant not only did not object in any way to a police examination of the contents, but, repeating that they were not his suitcases, volunteered to open them and did, in fact, attempt to open them for inspection by the officer. This voluntary effort to open the suitcases for the officer was abandoned by the defendant only when it became apparent that they were locked. Actions speak louder than words, and here the volunteered assistance in seeking to open the suitcases bespeaks full consent as eloquently as the verbal consent of the defendant.

This is almost the exact fact situation that was before this court in the recent *Soehle Case,* where voluntary consent was held to validate the search by the police of the contents of a locked container.[9] In both cases, there as here, the drivers were placed under arrest for driving without a driver's license. Both defendants were driving automobiles belonging to someone else. Both consented to police inspection of the contents of the automobile. Dur-

[8] *Warrix v. State, supra,* footnote 1, at page 376.

[9] *Soehle v. State, supra,* footnote 6.

ing such search, both defendants pointed out items they claimed did not belong to them (in *Soehle,* a locked container; in the case before us, the two locked suitcases).[10] In both cases, the automobiles and their contents came into police custody for safekeeping when the defendants were placed in jail. In *Soehle,* such contents included the locked container; in the case here, such contents included the two locked suitcases. In the *Soehle Case,* the key that fit the lock of the container was found on the person of the defendant. In the case before us, the keys that fit the locks of the suitcases were found in the glove compartment of the automobile. In both cases, the police opened the locked container or cases and examined the contents, finding contraband, which, in both cases, the defendants later sought to suppress as products of constitutionally inadmissible searches. In *Soehle,* this court held:

"Given a completely voluntary and entirely proper consent to a search of the car for such purpose, the police secured the right not only to seize the three containers, but also to examine their contents. Given valid consent or proper search warrant, the resultant right to seek and find included the right to examine the contents, as well as to seize the attaché case, the tobacco can and the locked container." [11]

What was concluded as to consent given in *Soehle* to a search for incriminating evidence, applies here to the custodial search when the automobile and contents came into police custody for safekeeping purposes. The principle determining both situations has been stated by this court to be: "A search and seizure are not in violation of constitutional rights if the person freely and intelligently

[10] Such disclaimer of ownership—in both these cases—constitutes an obvious intentional relinquishment of a known right. *See:* 31 C. J. S., *Estoppel,* p. 482, sec. 86.

[11] *Soehle v. State, supra,* footnote 6, at page 83.

gives his unequivocal and specific consent to the search, uncontaminated by any duress or coercion, actual or implied . . . ." [12] In both the *Soehle Case* and the case before us, such free and intelligent consent was given and for the same reason—defendants' electing to rely upon the claim that locked containers and their contents belonged to someone else. In the case before us, the defendant went beyond consent to affirmatively seek to open the locked suitcases so that the officer could inspect the contents defendant claimed belonged to someone else. That full and free consent, evidenced by word and volunteered actions, was never withdrawn, modified or limited, and it requires holding here that the evidence secured by such valid consent search was properly in the possession of the police.

The writer would hold the search here to be constitutionally valid both as a consent search and as a custodial search. So holding, the writer would reverse, setting aside the order of the circuit court granting defendant's motion to suppress evidence secured as a result of the search, and would remand the case for trial.

[12] *Barnes v. State* (1964), 25 Wis. 2d 116, 121, 130 N. W. 2d 264, in a search-of-the-person situation where the majority opinion held consent not to have been voluntarily given.