**UNITED STATES of America, Appellant,**

v.

**Louis ZAICEK, Defendant-Appellee.**

**No. 723, Docket 74–2662.**

United States Court of Appeals, Second Circuit.

Argued Feb. 25, 1975.

Decided July 3, 1975.

Frederick T. Davis, Asst. U. S. Atty., New York City (Paul J. Curran, U. S. Atty., S. D. N. Y., and John D. Gordan, III, Asst. U. S. Atty., on the brief), for appellant.

Albert A. Capellini, Elmsford, N. Y. (Vincent W. Lanna, Yonkers, N. Y., on the brief), for appellee.

Before LUMBARD, OAKES and TIMBERS, Circuit Judges.

LUMBARD, Circuit Judge:

The United States appeals from an order entered on November 18, 1974, in the Southern District granting defendant Louis Zaicek's motion to suppress as evidence the contents of an attache case discovered in a stolen car and from an order entered December 10, 1974, which

denied the government's motion for rehearing. We reverse.

Zaicek was charged with two counts of possession of stolen mail in violation of 18 U.S.C. § 1708 and with one count of transporting a stolen automobile across a state boundary in violation of 18 U.S.C. § 2312. The contents of the attache case which Zaicek moved to suppress as evidence included several bonds allegedly stolen from the mails.

On the motion to suppress Investigator Johansen of the New York State Police was the principal witness. He testified that he had received two reports in December 1972 concerning a 1972 Cadillac El Dorado automobile with Florida license plates. First, he was notified by Martin Upmal of the Vermont Motor Vehicle Department that a man named Louis Zaicek had attempted to register the automobile with them as a 1971 vehicle. When Zaicek was told additional proof of title would be needed to complete the registration, he left Upmal's office and did not return. Second, Johansen contacted the Florida Motor Vehicle Department and received a report that the car was registered to an automobile leasing company in Pompano Beach, Florida.

On December 27, 1972, Johansen and his partner noticed the Cadillac parked in a driveway in Valhalla, New York. When two men got into the car and prepared to drive away, Johansen blocked the driveway with his car. Johansen told the driver, who identified himself as Louis Zaicek, that the car had been reported as stolen. In response, Zaicek claimed that the car was rented and suggested that a call to the leasing company would verify his claim. Johansen called the company, and its vice president informed him that the check written by Zaicek to lease the car had bounced and that he had been informed that Zaicek had tried to register the car in his own name. He requested Johansen to arrest Zaicek and recover the car.

Johansen thereupon arrested Zaicek and drove Zaicek and his companion, Armenio Baddia, to the police station. The Cadillac was seized at the same time and driven to the police station by Johansen's partner, after which the car was locked and the keys were retained by Johansen.

While Zaicek was being booked, Baddia, who had not been arrested, stated that he had certain items of clothing in the car and asked if they could be returned to him. Johansen gave the car keys to two other officers so that they could retrieve Baddia's belongings. The officers returned a short time later with a pistol they had found in the glove compartment and an attache case with seven bond certificates in it which they had found in the trunk. The bonds were later determined to have been stolen from the mail. Johansen later conducted an inventory search of the car.

The government's second witness was Martin Upmal of the Vermont Motor Vehicle Office who corroborated Johansen's testimony about their conversation.

On these facts the district court suppressed the evidence because it felt that the search did not fall within any recognized exception to the warrant requirement of the Fourth Amendment. Judge Metzner held that the search was not incident to Zaicek's arrest and that it was not an inventory search because its purpose was to return Baddia's clothing to him and not to take an inventory. He also rejected the government's argument that a car can be searched without a warrant if it was validly seized by the police because "once the car is in police custody, there is no threat of removal of evidence therein. There is ample time to obtain a search warrant based on probable cause." For support of his decision he cited *Cady* v. *Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *Coolidge* v. *New Hampshire,* 403 U.S. 443, 461–62, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); and *Cooper* v. *California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

We disagree with the trial court's last stated holding[1] and feel that the cited cases, if anything, support the opposite

---

1. We see no need to pass on the district court's rulings that the search was not incident to an arrest or an inventory search.

result. The district court's suggestion that a search warrant is required once a car is firmly in police custody because there is time to secure such a warrant without risking the loss of evidence is an inaccurate statement of the law. As the Supreme Court noted in *Cady* it has sustained "warrantless searches of vehicles by state officers . . . in which the possibilities of the vehicle's being removed or evidence in it destroyed were remote, if not nonexistent." *Cady* v. *Dombrowski,* 413 U.S. at 441–42, 93 S.Ct. at 2528, citing *Harris* v. *United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) (permissible to conduct inventory search of car in police custody without a warrant), and *Cooper* v. *California,* 386 U.S. 58, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1967) (permissible to search forfeited car without a warrant).

 From these decisions and the decisions of this court, the law is well settled that when a car is seized by the federal agents pursuant to 49 U.S.C. § 782, on the grounds that it was used to transport contraband, the agents may search the car without a warrant. "If agents have probable cause to believe that a car is or has been used for carrying contraband, they may summarily seize it pursuant to the federal forfeiture statute and search it." *United States* v. *Capra,* 501 F.2d 267, 280 (2d Cir. 1974), *cert. denied,* 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 670 (1975). See also *United States* v. *Francolino,* 367 F.2d 1013, 1018–23 (2d Cir. 1966), *cert. denied,* 386 U.S. 960, 87 S.Ct. 1020, 18 L.Ed.2d 110 (1967); *United States* v. *La-Vecchia,* 513 F.2d 1210, 1215–1217 (2d Cir. 1975). The rationale underlying these decisions is that where the car is properly seized by the police pursuant to a forfeiture statute, they have a greater possessory interest in the car than the owner. The same principles should apply when a statute authorizes the police to seize a car that they have probable cause to believe is stolen. Indeed, in *Francolino,* where we first discussed this rule, we relied heavily on *Boyd* v. *United States,* 116 U.S. 616, 623, 6 S.Ct. 524,

528, 29 L.Ed. 746 (1886) where Justice Bradley wrote:

"The search for and seizure of stolen or forfeited goods, or goods liable to duties and concealed to avoid the payment thereof, are totally different things from a search for and seizure of a man's private books and papers for the purpose of obtaining information therein contained, or of using them as evidence against him. The two things differ *toto coelo.* In the one case, the government is entitled to the possession of the property; in the other it is not. The seizure of stolen goods is authorized by the common law . . . ."

As the trial court held, Johansen had probable cause to arrest Zaicek on the ground that the car was stolen, and Zaicek does not cross appeal from that holding. Under New York law a police officer "shall have power to seize any motor vehicle or motorcycle in the state where there is good reason to believe that such motor vehicle or motorcycle has been stolen . . . ." N.Y.Vehicle & Traffic Law § 424(3) (McKinney's Consol. Laws, c. 71, 1970). "The statute also directs an officer who seizes a car to go before a magistrate for a determination of the appropriate disposition of the car. While perhaps it is true, as the dissent argues, that it would have been possible for the officers to have obtained a search warrant when they appeared before the magistrate pursuant to the seizure statute, we do not think that they were required to do so. The issue is not whether it would have been convenient or easy for the officers to obtain a warrant; the issue is whether they had a possessory interest in the car superior to that of Zaicek. In this case they clearly did.

The district court found that the officers had probable cause to arrest Zaicek on the ground that the car was stolen. Thus, there is no doubt that they had "good reason to believe" that the car was stolen as is required by the New York statute. In this case it is particularly easy to conclude that Zaicek's inter-

est in the car was non-existent or at least inferior to that of the police since he did not own the car, but had stolen it. In addition, the actual owner of the car had requested the police to seize it.

Thus, the car was properly seized by the police. Following *Francolino,* we hold that once the police have properly seized a car pursuant to a statute because they have reasonable grounds for believing it has been stolen, they have the authority to search the car without a warrant.

*Cooper* v. *California, supra,* one of the cases cited by the district court in support of its decision, in fact supports the position we adopt here. In that case the Supreme Court ruled that a warrantless search did not violate the Fourth Amendment where a state statute authorized the seizure of a car used to transport narcotics and where "[the officers] seized [the car] because of the crime for which they arrested petitioner." 386 U.S. at 61, 87 S.Ct. at 791.[2] Here a state statute authorizes the seizure of an automobile which is believed to have been stolen and the seizure was certainly related to the crime for which Zaicek was arrested.[3]

**2.** The Court in *Cooper* agreed that the lower court there was correct in stating that "lawful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it." 386 U.S. at 61, 87 S.Ct. at 791. We think, however, that *Cooper* went on to recognize a distinction between cases where the police have seized a car pursuant to a statute and where they simply assumed custody of a car when they arrested the driver for an unrelated crime. In the latter case they are only providing a parking place for the car until the owner can make other arrangements to store it; in the former case, they have a statutorily based possessory interest in the car which is superior to that of the person from whom they seized it. As Justice Brennan explained in *Cady* v. *Dombrowski, supra,* at 453 (dissenting opinion), *Cooper* stands for the proposition that when the police have properly seized a car, they are "authorized to treat the car in their custody as if it were their own, and the search [is] sustainable as an integral part of their right of retention."

**3.** The two other Supreme Court cases cited by the district court are not at all inconsistent with our decision. In *Coolidge* v. *New Hampshire, supra,* the plethora of opinions make it

Thus, we reverse the decision of the district court. The state officers had probable cause to believe the car was stolen and under a New York statute they had the authority to and did seize the car. Once property seized by the police pursuant to a statute, such stolen or forfeitable property can be searched by them without a warrant.[4]

Reversed.

OAKES, Circuit Judge (dissenting):
I dissent.

The majority opinion omits the following salient fact: the attache case, the contents of which are in issue, was in the locked trunk of the rented automobile. It omits also, in quoting the text of N.Y. Vehicle and Traffic Law § 424(3) (McKinney 1970), which it relies on to support the subsequent search without a warrant or probable cause as to its contents, to quote the clause italicized below:

> Any policeman, state trooper or other peace officer shall have power to seize any motor vehicle . . . when there is good reason to believe that such motor vehicle . . . has been

unclear exactly what the court held. However, Justice Stewart's opinion for the Court, which took the most restrictive view of when warrantless searches were permissible, stressed that *Coolidge* did not involve contraband or stolen property. See 403 U.S. at 462, 472, 91 S.Ct. 2022. The suggestion was, of course, that a different result might be appropriate if contraband or stolen property was involved.

*Cady* v. *Dombrowski, supra,* cited in passing by the district court basically involved an inventory search. However, the Supreme Court upheld the warrantless search in part because the police had arranged to have the car held in a private parking lot and therefore exercised a form of custody or control over the car. (The Court also relied on the fact that the police knew that a gun was in the car and that it was standard procedure to remove such a weapon to protect the public.) In this case the police had more than the mere custody relied upon in *Cady;* they had rightfully seized the car pursuant to statute.

**4.** No claim has been made concerning the scope of the search. However, it appears that it was not as broad as the search we upheld in *United States* v. *Capra, supra.*

stolen, *but, in every case of seizure, the officer making the seizure shall forthwith proceed to the most accessible magistrate or judge who shall examine into the facts and shall direct either that the motor vehicle or motorcycle be forthwith released or that it be retained to await the action of the commissioner of motor vehicles . . . .*

(Emphasis supplied.)

What then results is a holding, as I read it, that whenever a car in New York is seized with probable cause to believe that it has been stolen, any warrantless search of it is valid regardless of a showing of exigent circumstances. With that result I disagree.

This is not a case, I emphasize, where the police had any reason to think that the car was in some way involved in some crime (other than its being stolen) such as robbery, narcotics traffic or the like. In such a case entirely different rules are applicable and such cases as *United States v. LaVecchia,* 513 F.2d 1210, 1215, 1217 (1975); *United States v. Tramunti,* 513 F.2d 1087, 1104 (2d Cir. 1975); *United States v. Capra,* 501 F.2d 267, 280 (2d Cir. 1974), *cert. denied,* 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 670 (1975); and *United States v. Francolino,* 367 F.2d 1013 (2d Cir. 1966), cert. denied, 386 U.S. 960, 87 S.Ct. 1020, 18 L.Ed.2d 110 (1967), are in point. The rationale of the forfeiture cases is not, as the majority says, that where the car is properly seized the police have a greater possessory interest in the car than has the owner. The rationale rather is that the un-derlying crime gives probable cause to believe that contraband may be found in the car. As the Court pointed out in *Cooper v. California,* 386 U.S. 58, 61, 87 S.Ct. 788, 791 (1967), the search "was closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained."

Nor is this a case in which the evidence sought to be suppressed was uncovered in an "inventory" search. *Cf. Cady v. Dombrowski,* 413 U.S. 433, 447–48, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).[1] Such a search was subsequently made, but the search here involved was not of this type.[2] While it might be argued that if evidence would subsequently be uncovered in a properly conducted inventory search, it could be taken in any prior search, this would not only fly in the face of the Fourth Amendment and any concept of it as a rule of law regulating governmental conduct, note 1 *supra,* but also the Supreme Court's admonition or axiom that "it is true . . . that 'lawful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it' . . . ." *Cooper v. California,* 386 U.S. at 61, 87 S.Ct. at 791. *See also Chambers v. Maroney,* 399 U.S. 42, 50–51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

Nor, finally,[3] is this a case where exigent circumstances stemming from the vehicle's mobility, *Chambers v. Maroney, supra; Carroll v. United States,* 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *United States v. Tramunti, su-*

---

1. In *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), relied on by the Court in *Cady,* the automobile "had been identified leaving the site of the robbery" and "was impounded as evidence." 413 U.S. at 445, 93 S.Ct. at 2530. There was, moreover, a police regulation requiring such a search, a factor that is vital under any regulatory approach to the Fourth Amendment. *See United States v. Barbera,* 514 F.2d 294 (2d Cir. 1975), slip op. 2481; A. Amsterdam, Perspectives on the Fourth Amendment, 58 U.Minn.L.Rev. 349 (1974) *passim.* As to the validity of warrantless inventory searches, *see generally United States v. Lawson,* 487 F.2d 468 (8th Cir. 1973);

Mozetti v. Superior Court, 4 Cal.3d 699, 94 Cal.Rptr. 412, 484 P.2d 84 (1971); *State v. Bradshaw,* 41 Ohio App.2d 48, 322 N.E.2d 311 (1974).

2. While the majority says it need not "pass on" the inventory search question, note 1, it is plain enough Judge Metzner was correct on this point; the officer who subsequently made the inventory search had for this search given the keys to the automobile to two other police to get Baddia's clothing as the majority opinion points out.

3. The Government does not argue that this was a search incident to an arrest.

pra, made it necessary to make an on-the-spot search for, say, self-protective purposes, or where in the course of a relatively minor intrusion objects in the vehicle "in plain view" are observed. *Cady* v. *Dombrowski,* 413 U.S. at 442, 93 S.Ct. 2523; *Harris* v. *United States,* 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *United States ex rel. La-Belle* v. *LaVallee,* 517 F.2d 750, 755 (2d Cir. 1975).

This case is, as I view it, *sui generis.* An argument can be made—if one takes an atomistic approach to the Fourth Amendment—that that Amendment is simply a collection of protections of an individual's sphere of interest and that an automobile reasonably thought to be stolen can have nothing whatsoever in it that is constitutionally protected. This is really what the majority is saying, of course.

But I prefer to view the Amendment differently, and I do so with the aid and assistance of the decisions in cases like *Coolidge* v. *New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), and *Almeida-Sanchez* v. *United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), as well as the rhetoric of many other Fourth Amendment decisions, *e. g., Cooper* v. *California,* 386 U.S. at 61, 87 S.Ct. 788. Under that view the Amendment is, as Professor Amsterdam has put it, "quintessentially a regulation of the police." Perspectives on the Fourth Amendment, 58 U.Minn.L.Rev. 349, 371 (1974). Here the very statute which was used to justify seizure of the automobile as probably stolen required that a judicial officer should oversee the seizure, N.Y.Vehicle and Traffic Law § 424(3), by requiring the police officer after the seizure "forthwith" to "proceed

to the most accessible magistrate or judge who shall examine into the facts" underlying the probable cause for seizure. While the majority opinion refers to "properly seized" automobiles, its thrust, it seems to me, would allow into evidence anything uncovered in a search even where there turned out to be no underlying probable cause for the vehicle's seizure. But even if I am wrong and the majority opinion is conditioned wholly on probable cause for the vehicular seizure, the search here cannot be so justified since the very same magistrate or judge who was to oversee the seizure could readily have been approached for a search warrant; needless to say, absent a finding of probable cause for the seizure of the vehicle he would not issue such a warrant.

Under the approach of the majority the door is open to vehicular searches practically unlimited by law, since anyone who cannot establish in a routine traffic check that he is or is driving with the registered owner may be suspected of stealing a vehicle. *See generally* Warrantless Searches and Seizures of Vehicles, 87 Harv.L.Rev. 835, 848–53 (1974). The view of the majority may on this basis be termed the "open door" approach. I cannot adopt it and make the Fourth Amendment mean anything consistent, whether in logic or as a balance between governmental intrusion and personal security and liberty. I do not read into the Amendment, even with the Supreme Court's vehicular gloss on it, a total exception relating to searches of vehicles;[4] indeed, I do not think that the *place* of applicability is what the Amendment is about.

This dissent follows from the above.

I disagree that the issue is, as the majority states, whether the police had "a possessory interest in the car superior to that of Zaicek." The issue is whether the search without a warrant of a brief case in the locked trunk prior to the auto seizure's being validated by a finding of the magistrate under New York law was a reasonable one.

---

4. The automobile is clearly an "effect" protected by the Fourth Amendment. *Cady* v. *Dombrowski,* 413 U.S. 433, 439, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). *See Katz* v. *United States,* 389 U.S. 347, 351–52, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); The Automobile Inventory Search and *Cady* v. *Dombrowski,* 20 Villanova L.Rev. 147, 154 (1974). *But see People* v. *Sullivan,* 29 N.Y.2d 69, 72, 323 N.Y.S.2d 945, 947, 272 N.E.2d 464, 465 (1971).