UNITED STATES of America,

v.

Vincent Charles PITEO, Mildred Sommella Piteo and Lewis Edward Wright, Defendants.

No. 80 Cr. 0587 (KTD).

United States District Court,
S. D. New York.

Sept. 1, 1981.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for United States; Michael E. Norton, Asst. U. S. Atty., New York City, of counsel.

Barry Ivan Slotnick, New York City, for defendant Vincent Piteo.

Santangelo, Santangelo & Cohen, New York City, for defendant Mildred Piteo; George L. Santangelo, New York City, of counsel.

OPINION

KEVIN THOMAS DUFFY, District Judge:

On August 21, 1980, two FBI agents conducted a warrantless search of defendants' warehouse. As a result of the search, several boxes containing stolen stereo equipment were seized. The agents also questioned the defendants Vincent and Mildred Piteo ["defendants"] about the stolen materials. Thereafter, defendants were arrested and indicted by the grand jury.

The defendants first move to dismiss the indictment and for inspection by this court of the grand jury minutes. Defendants also contend that the warrantless search and seizure at defendants' premises were in

clear violation of the fourth amendment to the Constitution. They move, therefore, to suppress the physical evidence seized as a result of the unauthorized search. The Piteos also move to suppress statements made by them to Agent Moran.

A two day hearing was held on the validity of the search and seizure as well as the voluntariness of defendants' statements. After considering all the credible evidence and testimony presented at the hearing, I hereby deny defendants' motions to suppress any physical or oral evidence. I also deny defendants' motions to dismiss the indictment and for inspection of the grand jury minutes.

I.

On August 21, 1980, the Newark, New Jersey office of the Federal Bureau of Investigation received a report that some Soundesign brand stereo equipment had been stolen from Don Dee Trucking Corporation located in Jersey City, New Jersey. Evidently, sometime in the early morning hours of that day, a trailer containing approximately 361 cartons of Soundesign equipment had been stolen from the Don Dee terminal yard.

Eight days later, on the Friday afternoon before Labor Day weekend at approximately 1:30 p. m., FBI Special Agent Robert deBellis received information relating to the stolen equipment from a confidential informant. The informant advised deBellis that a truckload of stolen Soundesign equipment was enroute to Manhattan and was to be delivered that afternoon to a warehouse operated by Piteo Trucking, Inc. located at 76 Thompson Street. Piteo Trucking is owned by the defendants. The informant also told deBellis that the vehicle transporting the goods was a forty-foot trailer pulled by a blue International tractor bearing New Jersey license number XUL–37F.

Agent deBellis conveyed this information to his supervisor, Agent McCarten. McCarten then relayed this message to Agent Conlin at the Brooklyn-Queens office of the FBI. Another agent, Neil Moran agreed to aid Conlin in the investigation and surveillance.

Conlin then proceeded in a vehicle to 76 Thompson Street, arriving there at 2:45 p. m. He observed that the premises consisted of a one-story warehouse type of building with a loading dock. The dock was set back from the sidewalk approximately forty feet allowing room for trucks to back into the loading area. Conlin also observed three large bays with roll-up doors for loading and unloading. Two of the bays were open and the interior of the warehouse was visible from the street. Conlin then drove around the corner and parked his car.

As he was walking back toward the warehouse, Conlin observed the tractor-trailer rig described by the informant arrive and park at the loading dock. As he walked by the warehouse, he observed wooden pallets loaded with large cartons on the dock behind the truck. He also observed some individuals on the dock who appeared to be unloading the truck.

At this point, Agent Moran arrived in a separate vehicle and Conlin briefed him on what had occurred. Conlin then called the Newark or Brooklyn-Queens FBI office from a telephone booth on Thompson Street to advise the office that he and Moran were going to "walk in." The agents did not attempt to contact a magistrate to acquire a search warrant.

Conlin and Moran then proceeded walking toward the loading dock area. As they moved toward the warehouse, they saw Mildred Piteo who at that moment turned to the warehouse and yelled "Hey Rocky!"

The agents then climbed onto the loading dock area via a five-step metal staircase. From this vantage point, Conlin saw cartons that appeared to contain stereo equipment with the brand name "Soundesign" on the exterior. He observed others stenciled or sprayed with black paint. Vincent Piteo then came forward and stated he was the manager of the warehouse. He was asked whether he had a bill of lading for the goods then being unloaded. He replied that he did not but could obtain the documents in a couple of days.

Agent Moran then questioned each of the Piteos separately. Both defendants were advised of their constitutional rights concerning such interrogations and they each stated their full understanding of their rights.

The Piteos were then arrested. The Soundesign equipment was inventoried and all but seven cartons were returned to their rightful owner. Those seven boxes were kept as evidence.

## II.

Defendants move to suppress the physical evidence seized during the course of the search of their warehouse. Defendants contend that the agents' entry of the warehouse was illegal because there was no danger that the destruction or removal of the cartons was imminent. Lacking such an exigency, defendants argue that the agents were obliged to obtain a search warrant.

The government answers that the agents had sufficient probable cause to believe that the commission of a crime was in process and, therefore, were justified in entering the warehouse to arrest the individuals involved. Furthermore, they also had good cause to believe that the cartons of stereo equipment might be moved before a search warrant was obtained. Once inside the warehouse, the government contends, the stolen stereo equipment was in plain view and, thus, subject to seizure.

The credible testimony and evidence adduced at trial shows that the agents had ample reason to believe that a crime was being committed at the Piteo warehouse. The agents were certainly justified in relying on the confidential informer. He had been providing the FBI with information for a number of years, leading to numerous arrests and the seizure of over $1,000,000 in stolen goods. Moreover, the content of the tip indicated that the informer was "relying on something more than casual rumor . . . or an individual's general reputation." *Spinelli v. United States*, 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969). The informant described the tractor-trailer rig which allegedly was carrying the stolen goods, recited the license plate registration and described the time and place the truck would be arriving at the defendants' warehouse.

■ The specifics of the tips were shown to be reliable by the agents' own observations. The rig described by the informant arrived on schedule at the Piteo warehouse. Agent Conlin was able to observe cartons on the loading dock which were large enough to contain stereo equipment. Mildred Piteo's shouted warning to those inside the warehouse also raised a reasonable suspicion that the defendants had something illegal to hide. Armed with this evidence that the individuals were participating in the receipt of the stolen Soundesign equipment, the agents were justified in entering the warehouse premises to effect their arrests.

The fact that the arrest took place in the defendants' warehouse is not material. We are not concerned in this case with the warrantless arrest of an individual in his home. Here the arrest took place in a commercial warehouse apparently open for public business. No signs forbade entry and the interior of the premises was well exposed through the open bays.

■ Once lawfully on the premises, the Soundesign boxes were in the agents' plain view. Even though the discovery of the boxes was not "inadvertent" as is usually required under the "plain view" doctrine *see, e. g., Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), the cartons were subject to seizure. The inadvertence requirement simply does not serve to protect fourth amendment rights where there has been a seizure of stolen goods. *See Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1970); *United States v. Zaicek*, 519 F.2d 412 (1975). The individuals in the warehouse had no apparent proprietary interest in the cartons. Moreover, to leave the boxes there would only further jeopardize the ultimate recovery of the goods by their rightful owner.

Under these circumstances, the seizure of the stereo cartons was reasonable within the meaning of the Fourth Amendment.

The government also argues that the warrantless search and seizure was justified on the grounds that the delay occasioned by the procedure necessary to obtain a search warrant would have afforded the defendants time to remove the contraband items before the agents returned. The truck which brought the cartons was there fully ready to remove them if the order was given. A warrant might have been required if the sole justification for entering the warehouse had been the belief that stolen goods were stored inside the building. Obtaining a warrant to effect the arrest of the Piteos in this case, however, was unnecessary. Here, the agents were entitled to enter the warehouse because they had probable cause to believe the individuals unloading the truck were committing a crime. Under these circumstances, delaying the arrest to obtain an arrest warrant was not required. Immediate entry to effect their arrest was justified. Once inside, the agents were permitted, under the plain view doctrine, to seize the stolen materials. Thus, the motions to suppress the evidence seized during the course of the search are denied.

### III.

Defendants finally move for the suppression of statements given by them to Agent Moran. I see no reason to do so. The Piteos were advised of their *Miranda* rights and expressed their understanding of those rights. Nothing in the circumstances surrounding the questioning of the defendants indicates that their answers were in any way coerced. Accordingly, defendants' motions to suppress their statements to Agent Moran are denied.

### IV.

Defendants' motions to dismiss their indictments and for inspection of the grand jury minutes are without merit. They are denied.

SO ORDERED.